# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-0312

ANGEL S. NIEVES-RODRIGUEZ, APPELLANT,

v.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided December 1, 2008)

*Mark R. Lippman*, of La Jolla, California, was on the brief for the appellant.

*Paul J. Hutter*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *Savitri D. Persaud*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, DAVIS, and SCHOELEN, *Judges*.

DAVIS, *Judge*: U.S. Army veteran Angel S. Nieves-Rodriguez appeals through counsel a November 17, 2005, Board of Veterans' Appeals (Board) decision that denied entitlement to disability compensation for major depression secondary to Guillain-Barre syndrome,[1] and to a disability rating in excess of 10% for his service-connected Guillain-Barre syndrome. This Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the following reasons, the Court will vacate the Board's November 2005 decision and remand the matter for readjudication consistent with this decision.

Preliminarily, the Court notes that the appellant does not raise any arguments regarding the disability rating for his service-connected Guillain-Barre syndrome. Thus, the Court deems any appeal with respect to this issue abandoned. *See Ford v. Gober*, 10 Vet.App. 531, 535 (1997).

---

[1] Guillain-Barre syndrome: acute idiopathic polyneuritis; idiopathic: of unknown cause or spontaneous origin; polyneuritis: inflammation of several peripheral nerves at once. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 803, 905, 1482 (30th ed. 2003).

The appellant's sole argument on appeal is that VA violated its duty to assist by failing to advise him that his claims file could be forwarded to the two physicians who provided medical opinions in support of his claim in order to assist these physicians in developing more complete medical opinions. The appellant reasons that a claimant should be offered the opportunity to provide the claims file to a physician furnishing a medical opinion on his or her behalf, at least where the Board attaches more probative value to a VA medical opinion on the basis the VA examiner reviewed the claims file. The appellant asserts that such a procedure is, or should be, inherently part of VA's duty to assist, consistent with congressional intent that VA is to "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." Appellant's Brief at 5 (citing H.R. REP. No. 100-963 (1988)). He argues that the Court should vacate and remand the Board's decision.

The Secretary responds that he has no duty, absent a request from a claimant, to forward the claims file to an opining private physician. He asserts that the Board gave a sufficient explanation for assigning more weight to the VA examiner's opinion than to the opinions on which the appellant relies, and argues for affirmance of the Board decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from November 1954 to October 1956. During service he was treated for Guillain-Barre syndrome. In April 1956, a service medical record (SMR) noted that the appellant had situational maladjustment because of separation from his parents and familiar surroundings and the fact that he disliked the kind of food prepared in the hospital. The appellant's service separation examination noted a normal psychiatric condition. In February 1957, a VA regional office (RO) granted service connection for Guillain-Barre syndrome and assigned a 10% disability rating.

Years later, the appellant began experiencing psychological difficulties for which he sought service connection. At a September 1970 psychiatric examination at the VA hospital in San Juan, Puerto Rico, the appellant complained of a nervous condition that had begun nine or ten months earlier, although he did not know what caused it. The examiner diagnosed the appellant with anxiety reaction but did not discuss the etiology of the condition. In November 1970, the RO denied

entitlement to service connection for anxiety reaction. October 1995 treatment records reflect a diagnosis of major depression. In November 1998, the RO denied the appellant's claim for entitlement to service connection for major depression, including as secondary to Guillain-Barre syndrome. The appellant perfected an appeal of the November 1998 rating decision in June 2000.

The appellant obtained medical opinions from two physicians, which he adduces in support of his claim for service connection. In April 1999, Dr. Norberto Pellot Moran submitted a letter stating that he had treated the appellant since 1995 and that the appellant "has the condition of Severe Major Depression, secondary to Guill[ain-] Barre condition." Record (R.) at 305. In July 2000, Dr. Jose Arturo Juarbe Ortiz [hereinafter "Dr. Juarbe Ortiz"] completed a VA Fee Basis Interim Summary in which he concluded that the appellant was "suffering from major depression as a result of his physical ailment service[-]con[n]ected condition." R. at 452.

At an October 2000 RO hearing, Dr. Juarbe Ortiz testified that he had reviewed the appellant's claims file and interviewed him on two occasions. He further testified that it was his opinion that the appellant had developed a depressive disorder as a result of his Guillain-Barre syndrome. The VA hearing officer asked Dr. Juarbe Ortiz whether he had read the records from a VA hospital neurology department as they related to the appellant's Guillain-Barre syndrome, and Dr. Juarbe Ortiz replied that he had not.

The appellant underwent VA psychiatric examinations in December 2000 and April 2004. The same physician conducted both examinations. After reviewing the appellant's claims file and medical records, the examiner noted that previous VA neurological evaluations showed "very little and very mild consequences from his Guillain-Barre" syndrome. R. at 488. The examiner opined that there was no etiological relationship between the appellant's present neuropsychiatric condition, dysthymic disorder, and sequelae of service-connected Guillain-Barre syndrome.

In the decision here on appeal, the Board placed more probative weight on the VA psychiatric examinations. The Board found the VA examiner's opinions "persuasive and supported by medical evidence," and stated that the examiner had "provided a definitive opinion with rationale, which was supported by specific examples from the veteran's medical records." R. at 8. The principal reason the Board gave for discounting the evidence in the medical opinions from Dr. Pellot Moran and Dr. Juarbe Ortiz, submitted by the appellant, was that "neither private psychiatrist's assessment linking

3

the veteran's depressive disorder to service-connected Guillain-Barre syndrome is informed by the in[-]depth claims file review as are the assessments of the VA psychiatrist." R. at 9.

## II. ANALYSIS

### A. Duty To Assist

At issue is what activities are encompassed by the statutory duty to "make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim." 38 U.S.C. § 5103A(a). The duty to assist under 38 U.S.C. § 5103A is very broad, and VA has discretion to decide how much development is necessary. *See Shoffner v. Principi*, 16 Vet.App. 208, 213 (2002). Beyond requiring the Secretary to provide a medical examination or obtain a medical opinion "when such an examination or opinion is necessary to make a decision on the claim," 38 U.S.C. § 5103A(d)(1); *McLendon v. Nicholson*, 20 Vet.App. 79, 81 (2006); 38 C.F.R. § 3.159(c)(4) (2008), however, neither the statute nor its implementing regulation specifies what further evidentiary development is required once VA has determined that the medical evidence that has been submitted is insufficient to decide the claim.[2]

In this case, VA provided two medical examinations. *See* R. at 486-88 (December 2000 VA examination); R. at 556-64 (April 2004 VA examination). The appellant does not argue that either VA examination was inadequate in any respect, nor does he argue that VA's intention in ordering the examinations was to develop negative evidence, in violation of *Mariano v. Principi*, 17 Vet.App. 305, 312 (2003) ("Because it would not be permissible for VA to undertake . . . additional development if [the] purpose was to obtain evidence against an appellant's case, VA must provide an adequate statement of reasons or bases for its decision to pursue further development where such development reasonably could be construed as obtaining additional evidence for that purpose."). Further, the Board stated that the VA medical examinations were persuasive for multiple reasons, none of which have been challenged by the appellant. Accordingly, the Court holds that VA's procurement of the VA medical examinations was an adequate effort to assist in developing the appellant's claim. In short, VA fulfilled its duty to assist.

---

[2] The duty to assist also includes assisting the claimant to obtain various documentary records, although that specific duty is not at issue in this case. *See* 38 U.S.C. § 5103A(b), (c).

4

Nevertheless, the appellant argues that VA has the duty to advise a claimant that a copy of the claims file can, with the appropriate authorization, be forwarded to a private physician who intends to render an opinion on behalf of the claimant. If VA regards a private medical opinion as deficient because it is not based on a review of the claims file, the appellant reasons, the Secretary should offer to furnish the claims file to that physician in order to render a more complete opinion. In the appellant's view, this offer should be made before any merits determination.

The appellant cites *Watai v. Brown*, 9 Vet.App. 441, 444 (1996), in support of his argument. In *Watai*, a private physician submitted a nexus opinion that, while generally favorable to the veteran's case, stated: "Since I do not have access to his medical records, I would not be able to evaluate this aspect [nexus to service events] of his renal problem." *Id.* at 442. The *Watai* Court held that "the Secretary was put on notice that the appellant needed to develop further the evidence pertinent to his claim. *Under these circumstances*, the Secretary had a duty to inform the appellant that the Secretary, upon proper authorization . . . would furnish copies of the relevant service medical records to [the physician] to enable him to render a less speculative opinion." *Id.* at 444 (emphasis added).[3]

At the outset, the Court notes that the facts of this case are distinguishable from those of *Watai* in at least two important respects. First, in *Watai*, VA never afforded the veteran a medical nexus examination, basing its determination solely on the inconclusiveness of the private medical examination reports with respect to the causation issue. In this case, however, the appellant underwent two VA psychiatric examinations. Second, unlike the private physician in *Watai*, neither of the physicians who provided the appellant's medical opinions in this case expressed any sense of limitation on their ability to render an opinion based upon lack of access to the claims file. In fact, one of the physicians on whose opinion the appellant relies–Dr. Juarbe Ortiz–apparently had a copy of the claims file, but incompletely reviewed it.

*Watai* is merely in accord with other cases establishing that the content of information and evidence received by VA may require an appropriate response, consistent with the duty to assist.

---

[3] The Court notes that, here, Dr. Pellot Moran concluded his letter with the statement, "For any additional information in this matter, please communicate with us and we will happily answer you." R. at 305. The Court takes no position on whether this invitation raised a duty of further inquiry on the part of VA, as no such argument has been raised or briefed to the Court.

5

*See, e.g., Daves v. Nicholson*, 21 Vet.App. 46, 51-52 (2007) (VA medical examiner's statement that the requested opinion could not be provided without an autopsy triggered the Secretary's duty to investigate whether autopsy could be reasonably obtained); *Green v. Derwinski*, 1 Vet.App. 121, 123 (1991) ("It is . . . impossible to square the Secretary's duty to assist . . . with [VA's] failure to follow up the suggestion by the examining physician that a review of the veteran's records 'might help clarify the diagnostic doubt.'"). All of these cases extend the Secretary's duty to assist based on a statement by a medical professional placing VA on notice that review of the claims folder was necessary in *the particular case* to render a thorough opinion.

Even the most expansive reading of *Watai* does not establish a general duty to point out the availability of the claims file to every claimant who seeks or provides private medical evidence. To find that *Watai* imposes such a general duty, we must assume that VA will systematically discount private medical opinions where they are not based on review of the claims file. In such a scenario, the absence of the claims file would be an automatic penalty against an opinion offered by a private physician, and it would be superfluous whether the opinion expressly noted that the private physician was hampered by its absence. For reasons set forth below, however, the Court rejects that assumption.

### B. Law and Practice of Evaluating Medical Opinions

We next turn to the question whether the Board erred in discounting the opinions of Dr. Pellot Moran and Dr. Juarbe Ortiz, submitted by the appellant in support of his claim, merely because they were not based on a review of his claims file. As with all types of evidence, it is the Board's responsibility to weigh the conflicting medical evidence to reach a conclusion as to the ultimate grant of service connection. *See Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991). The Board may favor the opinion of one competent medical expert over another if its statement of reasons and bases is adequate to support that decision. *See Owens v. Brown*, 7 Vet.App. 429, 433 (1995). Stated another way, the Board decides, in the first instance, which of the competing medical opinions or examination reports is more probative of the medical question at issue.

This Court has heretofore issued only the most general guidelines as to what factors contribute to the probative value of medical opinions. *See Guerrieri v. Brown*, 4 Vet.App. 467, 470-71 (1993) ("The probative value of medical opinion evidence is based on the medical expert's

6

personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches."). More recently, this Court held that a medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two. *See Stefl v. Nicholson*, 21 Vet.App. 120, 124 (2007) ("[A] medical opinion . . . must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions."). The question remains whether the lack of claims file review necessarily reduces the probative value of a medical opinion submitted on behalf of a claimant.

### 1. Adequacy of VA Medical Examinations

The Secretary's regulations provide that it is "essential, both in the examination and in the evaluation of disability, that each disability be viewed in relation to its history." 38 C.F.R. § 4.1 (2008). Further, "[i]f a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for rating purposes." 38 C.F.R. § 4.2 (2008). It is also well established in this Court's jurisprudence that a thorough and contemporaneous medical examination is "one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one." *Green*, 1 Vet.App. at 124. Thus, the Secretary, when he undertakes to provide a medical examination or obtain a medical opinion, must ensure that the examiner providing the report or opinion is fully cognizant of the claimant's past medical history.

Both the Court and VA have invoked the notion of reviewing the "claims file" as a surrogate for obtaining an overview of the entire medical history.[4] *See Proscelle v. Derwinski*, 2 Vet.App. 629, 632 (1992) ("The [VA] examiner should have the veteran's full claims file available for review."). The claims file, generally speaking, contains all documents associated with a veteran's disability claim, including not only medical examination reports and SMRs, but also correspondence, raw medical data, financial information, rating decisions of VA regional offices, Notices of Disagreement, such materials pertaining to claims for conditions not currently at issue and, often, Board decisions disposing of earlier claims.

---

[4] VA materials refer to a "claims folder," which is defined as "[t]he file containing all documents concerning a veteran's claim or appeal." *Understanding the Appeal Process* (VA Pamphlet 01-95-1) at 27 (Apr. 1995).

This Court, however, has not required VA medical examiners to perform a complete review of the entire claims file or state that they have done so in every instance. *See Snuffer v. Gober*, 10 Vet.App. 400, 403-04 (1997) (review of claims file not required where it would not change the objective and dispositive findings made during a medical examination); *see also D'Aries v. Peake*, 22 Vet.App. 97, 106 (2008) (holding that it is not necessary for a VA medical examiner to specify that he has read the entire claims file where it is clear from the report that he has done so and is familiar with the claimant's extensive medical history).

### 2. Private Medical Opinions

The claimant may submit his own medical evidence from private physicians. 38 U.S.C. § 5125. Unlike other administrative benefits systems, however, this Court has expressly rejected a rule that the opinions of private treating physicians are entitled to presumptively greater weight in evaluating veterans' claims. *See Guerrieri*, 4 Vet.App. at 473; *see also D'Aries*, 22 Vet.App. at 107-08. Therefore, VA is statutorily permitted, but not required, to accept a report provided by a private physician as sufficient to grant a claim without confirmation by a VA examination, "if the [private physician's] report is sufficiently complete to be adequate for the purpose of adjudicating the claim." 38 U.S.C. § 5125. This Court has noted that while this statutory language is permissive, "clearly it would not permit the Board to act in an arbitrary and capricious manner in not crediting a claimant's medical evidence." *Kowalski v. Nicholson,* 19 Vet.App. 171, 177 (2005) (citing *Struck v. Brown*, 9 Vet.App. 145, 155 (1996)); *see also Mariano, supra.* The Board may attribute less probative value to a private opinion, however, if the Board provides an adequate statement of reasons or bases for doing so. *Owens,* 7 Vet.App. at 433*; Gabrielson v. Brown,* 7 Vet.App. 36, 39-40 (1994) (holding that Board must provide adequate statement of reasons or bases for rejecting any favorable evidence); *Stefl,* 21 Vet.App. at 124-25 (discussing valid ways in which lay adjudicators can weigh conflicting medical evidence); *see also Kowalski*, 19 Vet.App. at 179 ("[T]he Board may not disregard a medical opinion *solely* on the rationale that the medical opinion was based on a history given by the veteran.").

### C. The Determinants of Probative Value in Medical Opinions

Part of the Board's consideration of how much weight to assign is the foundation upon which the medical opinion is based. *Kowalski*, *supra; Reonal v. Brown*, 5 Vet.App. 458, 461 (1993)

8

(holding that the Board may reject a medical opinion that is based on facts provided by the veteran that have previously been found to be inaccurate); *Swann v. Brown,* 5 Vet.App. 229, 233 (1993) (same); *Wilson v. Derwinski,* 2 Vet.App. 614, 618 (1992) (stating that the Board must evaluate the credibility and weight of the history upon which a medical opinion is predicated).

Both VA medical examiners and private physicians offering medical opinions in veterans benefits cases are nothing more or less than expert witnesses. While the Federal Rules of Evidence are not binding in this Court, nor on the Board, the rules on expert witness testimony provide useful guidance that has been exhaustively vetted by both the Rules Advisory Committee and by the U.S. Congress. In U.S. district courts, expert testimony may be received from a suitably qualified expert under the following conditions: (1) The testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert witness has applied the principles and methods reliably to the facts of the case. *See* FED. R. EVID. 702. The Court agrees that these are important, guiding factors to be used by the Board in evaluating the probative value of medical opinion evidence, and that this Court's review of the Board's evaluation of competing medical opinions will be enhanced by their application. Notwithstanding that medical professionals offering medical opinions in veterans benefits cases do not typically testify subject to cross-examination, the Court believes that these criteria are important indicators of the probity of medical opinions. Therefore, where the Board favors one medical opinion over another, the Court will review the Board's decision to determine whether these criteria have been met or properly applied.

### 1. Sufficient Facts and Data

The first inquiry is whether the medical expert is informed of sufficient facts upon which to base an opinion relevant to the problem at hand. FED. R. EVID. 702. In this inquiry, the claims file is not a magical or talismanic set of documents, but rather a tool to assist VA examiners to become familiar with the facts necessary to form an expert opinion to assist the adjudicator in making a decision on a claim. There are other means by which a private physician can become aware of critical medical facts, not the least of which is by treating the claimant for an extended period of time. *See, e.g., Kowalski*, 19 Vet.App. at 179 (holding that the Board may rely on a private medical opinion that is based on an accurate medical history offered by the veteran). Review of pertinent medical literature may also furnish information relevant to diagnostic and nexus issues.

The mere statement that one physician did or did not have access to a claims file is of little use in providing adequate reasons or bases for a decision where the Board fails to explain what information in the claims file was important and necessary for a competent and persuasive medical opinion, and why the absence of record review detracts from the probative value of the opinion of a physician. It follows that review of a claims file by a VA examiner, without more, does not automatically render the examiner's opinion competent or persuasive, *see Stefl, supra*. Moreover, the absence of claims file review by a private medical expert does not categorically exclude the possibility that he is nevertheless informed of the *relevant* facts, *see Snuffer, supra.* There are even instances where claims file review may be irrelevant to the medical issue at hand. *See, e.g., Francisco v. Brown*, 7 Vet.App. 55, 58 (1994) (where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability, not the medical history, is of primary concern).

In all cases, it is what an examiner learns from the claims file for use in forming the expert opinion–and not just the reading of the file–that matters. When the Board uses facts obtained from review of the claims file as a basis for crediting one expert opinion over another, it is incumbent upon the Board to point out those facts and explain why they were necessary or important in forming the appropriate medical judgment.

Accordingly, the Court holds that claims file review, as it pertains to obtaining an overview of the claimant's medical history, is not a requirement for private medical opinions. This Court has never imposed a burden of claims file review on all private physicians furnishing medical evidence. *But see D'Aries*, 22 Vet.App. at 108 (inability to determine whether a private physician read the claims file given by the Board as one of several factors supporting weight assigned to that opinion); *Prejean v. West*, 13 Vet.App. 444, 448-49 (2000) (upholding Board determination that VA examination reports were more probative because they were more thorough and detailed, they discussed the conflicting opinions, and examiners had access to the claims file); *Sims v. Nicholson,* 19 Vet.App. 453, 458-59 (2006) (affirming Board finding that a private medical opinion was not entitled to probative weight because the examiner did not have the veteran's claims file to review). Imposing on a physician a requirement that he read a compilation of documents that can run to thousands of pages (many of which, as noted above, are often irrelevant to the issue before the

physician) in order that his or her opinion not be summarily discounted, has no inherent value to the probity of the opinion. Furthermore, treatment of the claims file as a surrogate for awareness of significant facts in a medical history may lead to error. The Court is reluctant to expand the duty to assist in a direction that seems to countenance, and even institutionalize, such practices.

Therefore, a private medical opinion may not be discounted *solely* because the opining physician did not review the claims file. Likewise, the Court holds that the Board may not prefer a VA medical opinion over a private medical opinion *solely* because the VA examiner reviewed the claims file.

This is not to say that particular medical information contained in a claims file might not have significance to the process of formulating a medically valid and well-reasoned opinion. As with any expert opinion, the factual premises of a medical opinion are certainly subject to examination. Many times those facts can be found in the information contained in the claims file. Critical pieces of information from a claimant's medical history can lend credence to the opinion of the medical expert who considers them and detract from the medical opinions of experts who do not. Therefore, a recitation of the medical information on which the opinion is based can aid the Board's evaluation of the sufficiency of the opinion. Of course, a veteran should take care to personally provide those medical facts of which a physician should be aware in formulating a medical opinion on the veteran's behalf.[5]

## 2. *Application of Reliable Principles and Methods*

That the medical expert is suitably qualified and sufficiently informed are threshold considerations; most of the probative value of a medical opinion comes from its reasoning. Neither a VA medical examination report nor a private medical opinion is entitled to any weight in a service-connection or rating context if it contains only data and conclusions. *See Stefl,* 21 Vet.App. at 125 (holding that "a mere conclusion by a medical doctor is insufficient to allow the Board to make an informed decision as to what weight to assign to a doctor's opinion"); *Miller v. West*, 11 Vet.App. 345, 348 (1998) ("A bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record."); *see also Dennis v. Nicholson*, 21 Vet.App. 18, 22 (2007)

---

[5] The Court notes that, although VA physicians have more ready access to a veteran's claims file, there are regulatory provisions that enable a veteran to obtain copies of the claims file if he or she so chooses, and further provide that the Board will defer action on an appeal pending such a request. *See* 38 C.F.R. §§ 1.577; 20.1200 (2008).

("The Court has long held that merely listing evidence before stating a conclusion does not constitute an adequate statement of reasons and bases." (citing *Abernathy v. Principi*, 3 Vet.App. 461, 465 (1992))); *but see McLendon, supra,* (holding that a conclusory opinion may furnish enough evidence of current disability or medical nexus so as to call for a VA medical examination).

It should now be obvious that a review of the claims file cannot compensate for lack of the reasoned analysis required in a medical opinion. It is the factually accurate, fully articulated, sound reasoning for the conclusion, not the mere fact that the claims file was reviewed, that contributes probative value to a medical opinion. The Board must be able to conclude that a medical expert has applied valid medical analysis to the significant facts of the particular case in order to reach the conclusion submitted in the medical opinion. *See Stefl, supra.* These significant facts may or may not include matters evident from a review of the claims file, given the nature of the issue under consideration.

## D. Application to Present Case

In this case, the Board stressed that "[f]actors for assessing the probative value of a medical opinion include the physician's access to the claims file and the thoroughness and detail of the opinion." R. at 9 (citing *Prejean*, 13 Vet.App. at 448-49). Accordingly, the Board stated that it assigned more probative weight to the VA opinions because the examiner

> had reviewed the veteran's claims file. She provided a definitive opinion with rationale, which was supported with specific examples from the veteran's medical records. Her opinion is persuasive and supported by the medical evidence.

R. at 8. The Court agrees and concludes that the Board's assignment of more probative weight to these VA opinions was based on more than just the statement that the VA examiner had reviewed the claims file. The VA medical examiner twice interviewed and evaluated the appellant according to *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV) criteria, rendering a diagnosis of dysthymia. She noted that his previous neurological evaluations and service medical records revealed very little and very mild consequences of the Guillain-Barre syndrome. She further noted that the records revealed that the appellant began experiencing symptoms of depression in 1995, some 39 years after separation from service, and after a productive working life. *See Maxon v. Gober*, 230 F.3d 1330 (Fed. Cir. 2000) (evidence of a prolonged period without medical complaint after service can be considered as a factor in determining a service-connection claim).

12

Further, the Court concludes that the Board provided adequate reasons for rejecting the opinion of Dr. Juarbe Ortiz. The Board noted that, *despite* having a copy of the claims file to review, Dr. Juarbe Ortiz did not completely review the medical information therein, and therefore overlooked key documents, particularly the "reports of VA neurological examinations depicting the nature and extent of Guillain-Barre syndrome" since the appellant's separation from service. R. at 8-9. As noted above, it is what an examiner *learns* from the claims file that matters, not merely the review itself. Here, Dr. Juarbe Ortiz's failure to fully review the medical information in the claims file resulted in his overlooking pertinent reports regarding the appellant's medical history, and the Board adequately explained that it was his failure to review those particular reports that rendered his opinion less probative than the opinions of the VA medical examiner. In other words, the Board's decision to reject Dr. Juarbe Ortiz's opinion was not based *solely* on his failure to completely review the appellant's claims file, but rather on the fact that his opinion lacked foundation in that the portion of the claims file he did not review contained medical facts important to the formulation of the opinion sought.

In contrast, the Board never explicitly addressed the thoroughness and detail of Dr. Pellot Moran's opinion. Instead, the Board assigned less probative weight to that opinion solely because it was not "informed by the in[-]depth claims file review as [were] the assessments of the VA psychiatrist." R. at 9. The Board stated only that Dr. Pellot Moran "made no reference to having reviewed the veteran's claim file" without further discussion or analysis of his opinion, and without explaining why a review of the claims file was necessary. R. at 8. Moreover, the Board did not consider whether, even in the absence of claims file review, Dr. Pellot Moran had any knowledge of the appellant's medical history–which, as noted above, is necessary in many cases to render an adequate medical opinion–in light of the fact that he had been providing psychiatric treatment to the appellant for nearly five years at the time he rendered his opinion. Accordingly, because the Board rejected Dr. Pellot Moran's private medical opinion solely because he did not review the appellant's claims file (and, by extension, concluded that he was not familiar with the appellant's medical history), the Court will remand this matter to the Board for it to assess Dr. Pellot Moran's private opinion in accordance with the procedures set forth in this decision.

13

On remand, the appellant is free to submit additional evidence and argument in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order).  *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002).  The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991).  In addition, the Board shall proceed expeditiously, in accordance with 38 U.S.C. § 7112 (expedited treatment of remanded claims).

## IV.  CONCLUSION

The Board's November 17, 2005, decision is VACATED and the matter is REMANDED for readjudication consistent with this decision.