NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JAMES BECK,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI,**
**SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7039

---

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 08-3834, Judge Alan G. Lance, Sr.

---

Decided: September 9, 2011

---

DARLA J. LILLEY, Lilley Law Firm P.L.L.C., of Daingerfield, Texas, for claimant-appellant.

ALLISON KIDD-MILLER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Direc-

tor, and KIRK T. MANHARDT, Assistant Director. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and TRACEY P. WARREN, Attorney, United States Department of Veteran Affairs, of Washington, DC.

———————————————

Before NEWMAN, O'MALLEY, and REYNA *Circuit Judges*

PER CURIAM.

James Beck ("Beck") appeals the decision of the United States Court of Appeals for Veterans Claims (the "Veterans Court") affirming the judgment of the Board of Veterans Appeals (the "Board"). The Veterans Court affirmed the Board's judgment because it concluded that treatise evidence submitted by Beck was insufficient to establish a nexus between his back injury and his service, or undermine the VA medical examiner's opinion that Beck's back injury was not service connected. Beck asserts this was error because the Veterans Court: (1) refused to consider the treatise evidence without a supporting medical opinion; (2) refused to consider the treatise evidence for the purpose of impeaching the medical examiner's opinion; and (3) failed to apply the correct standard for weighing conflicting medical evidence. Because we conclude that this appeal does not invoke our jurisdiction under *Morgan v. Principi*, 327 F.3d 1357 (Fed. Cir. 2003), or challenge the validity of any statute or regulation, any interpretations thereof, or raise any constitutional controversies, we *dismiss* for lack of jurisdiction.

## BACKGROUND

Beck served on active duty in the U.S. Navy from February 1962 to May 1966. Appendix ("A") 8. In 1998, Beck filed a claim for service connection for his back

injury. While Beck's service records and separation examination make no mention of a back injury, according to Beck, he injured his back in 1963, while serving aboard the U.S.S. Kitty Hawk. The injury occurred when Beck and another sailor were carrying a two-hundred pound amplifier up a stairwell. Beck testified that, while carrying the amplifier, "he felt something go in his back." A 34. Beck indicated that because the injury was painful, he went to sick call. At sick call, however, he did not see a doctor and was only given a cursory examination. He was not prescribed pain medication.

During the remainder of his service, Beck did not receive additional treatment for his back injury. Beck's separation physical, moreover, stated that his spine/other musculoskeletal was normal, and there was no mention of any back injury. After discharge, Beck indicated that he first sought treatment for his back in the late 1960s. Records relating to this treatment, however, do not exist because they were destroyed. Accordingly, the earliest medical records describing his back injury are from the early 1990s.[1]

The first of these medical records, a May 1990 CT scan, was interpreted by Beck's doctor as being negative, with vertebrae, facets and facet joints described as unremarkable and no evidence of a herniated disc. In 1992, Beck had another CT scan; his doctor found this scan to be abnormal. As a result of this abnormal scan, Beck

---

[1] Additionally, Beck submitted a copy of a life insurance application form from March 1979. The form listed the name of a doctor who Beck stated had treated him for back pain during the 1970s. The form did not, however, indicate that Beck suffered from back pain. Indeed, on the form Beck denied having had any illness, surgical procedure, or treatment by a physician in the past three years.

underwent a laminotomy and disc excision surgery.

On the basis of this record and a letter from Dr. Robert D. Taylor, Beck sought service connection for his back injury. The VA regional office ("RO") denied his claim. After this initial denial of his claim, Beck submitted two additional pieces of evidence in support of his claim. The first was a statement from his wife, indicating that Beck injured his back in service. The second was letter from Dr. Ira C. Denton, noting that he performed back surgery on Beck in 1992. Submission of this additional evidence[2] resulted in an extensive procedural history, which is not relevant to this appeal. This history culminated in December 2004 with the Board remanding the case for, among other things, a medical examination of Beck.

Beck's medical examination occurred in June 2007, and an addendum to the examination was submitted in December 2007. The examiner concluded that Beck's back injury "is less likely as not (less than 50/50 probability) caused by or a result of non-treated and non-reported back injury in 1963." A 9. Explaining the rational for this conclusion, the examiner stated:

> Veteran's c-file was carefully reviewed. This examiner could not find evidence of any low back complaints between 1962-1966. The separation exam in 5.3.1966 showed normal spine exam. The

---

[2] In January of 2004, Beck also submitted a letter written By Dr. Evans, indicating that he had treated Beck for his back injury since 1998. The letter stated that Beck's history of back problems began with his injury while in service. Dr. Evans concluded that, because Beck had sustained no other acute injury to his back since his service, it was therefore as likely as not that Beck's recurrent back pain was the result of his 1963 injury while in the Navy.

CT scan in 5.31.1990 was normal. An abnormal CT scan was seen in 11/16/1992 which led to a laminotomy and disc excision. The earliest complaints of low back pain was [sic] documented by veteran's claim that he was seen and treated during 1972-1973 for low back pain (Dr. Lienke has no medical records). Even if this was the case, veteran complained of low back pain 10 years after the supposed incident. This is too far removed to be connected to the non-documented injury in 1963, which makes veteran's current low back condition less likely to be related to the non-documented low back injury.

*Id.* In response to this report, before the Board, Beck submitted treatise evidence[3] and lay statements in support of his claim. After considering all of the evidence before it, the Board concluded that Beck's back injury was not service connected.

With respect to the conflicting medical evidence, the Board assigned greater weight to the examiner's opinion than Beck's private doctors because "it was based on a review of the veteran's medical history; whereas there is no evidence that the veteran's private doctors ever reviewed his service treatment records." A 38. The Board placed particular importance on the fact that the examiner emphasized that Beck showed no back disability at the time of separation while "none of the private opinions even mentioned the lack of a back disability in service or the lack of any treatment for a number of years after service." *Id.* The Board concluded that the "failure to

---

[3] According to Beck, the treatise evidence reflected "that most people with back pain do not seek medical treatment; back pain is typically recurrent; and the absence of back pain on any give[n] day does not imply normal lumbar function." A 66.

address this relevant fact renders the private medical opinions less credible than the VA examiner's report." *Id.*

Regarding the treatises submitted by Beck, the Board noted that

> a medical article or treatise can provide important support when combined with an opinion of a medical professional if the medical article or treatise evidence discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least plausible causality based upon objective facts rather than on a un-substantiated lay medical opinion.

A 38–39 (internal quotations and citation omitted). In Beck's case, however, because the treatise evidence submitted was not accompanied by the opinion of any medical expert, the Board concluded that the treatise evidence was insufficient to establish the required nexus between his back injury and his time in service.

Finally, the Board determined that the various letters from Beck's friends and family had minimal probative value because the letters were not entirely consistent, and they were written 40 years after the relevant events occurred. In light of these conclusions, on October 31, 2008, the Board denied Beck's claim. Beck received notice of this decision, and he timely appealed to the Veterans Court.

Before the Veterans Court, Beck argued that the Board's rejection of the treatise evidence was contrary to law because treatise evidence can be considered even if it is not supported by a medical opinion. Beck asserted that the Board erred by refusing to consider the treatise evidence for two distinct purposes: (1) to establish an etiological nexus; and (2) to undermine the credibility of the

medical examiner's opinion. In his reply brief, however, Beck abandoned his arguments with respect to establishing an etiological nexus. Instead, Beck framed the issue before the Veterans Court as "whether impeachment evidence in the form of treatise evidence must be supported by a medical opinion." A 65 n.5.

After considering the parties' arguments, the Veterans Court affirmed the Board's decision. Specifically, the Veterans Court concluded that the Board did not commit legal error by refusing to consider the treatise evidence for the purpose of impeaching the examiner's opinion. At the outset, the Veterans Court noted that treatise evidence may be invoked to show a nexus in the absence of a supporting medical opinion. The Veterans Court highlighted that, while the Board seemed to "conflate" the possible situations in which treatise evidence will and will not be considered absent a supporting medical opinion, the Board seemed to mean that Beck's treatise evidence was too uncertain to meet the requirements for consideration absent a supporting medical opinion. A 12. Importantly, the Veterans Court found that the treatise evidence was "quite general." A 13. In light of this determination, the Veterans Court concluded that it was "unclear how this information would impeach the VA examiner's competence," and that Beck had "not met his burden of demonstrating that the Board erred in finding the examiner and his opinion competent." *Id.*

Beck timely appealed this decision.

DISCUSSION

I.

Our review of Veterans Court decisions is limited by statute. *See Yates v. West*, 213 F.3d 1372, 1373–74 (Fed. Cir. 2000). By statute, our jurisdiction over appeals from

the Veterans Court is limited to those appeals that challenge the validity of a decision of the Veterans Court with respect to a rule of law or the validity of any statute or regulation, any interpretations thereof, or that raise any constitutional controversies. *See* 38 U.S.C. § 7292 (2006). We do not have jurisdiction to hear appeals challenging factual determinations or the application of law to the facts of a particular case, unless there is a constitutional issue present. *See* § 7292(d)(2).

## II.

On appeal, Beck asserts that the Veterans Court erred by misinterpreting: (1) 38 C.F.R. § 3.159(a); (2) 38 U.S.C. § 5103A and 38 C.F.R. §§ 4.1, 4.2; and (3) the rule of law established in *Nieves-Rodriguez v. Peake*, 22 Vet. App. 295 (2008). The government argues that we lack subject matter jurisdiction over this appeal because Beck's appeal does not actually challenge the Veterans Court's interpretation of any statute or rule of law. For the reasons discussed below, we agree with the government. Accordingly, we lack subject matter jurisdiction and dismiss this appeal.

Beck's first and second arguments on appeal are based on an incorrect reading of the Veterans Court's decision. While Beck raises these arguments as separate and distinct, because they present related issues, we will address them together. In essence, these arguments are premised on Beck's assertion that the Veterans Court refused to consider the treatise evidence because it was not accompanied by a medical expert opinion, and that the Veterans Court found that the treatise evidence could not be used to undermine the credibility of the examiner's medical opinion. Beck's characterization of the Veterans Court's decision is inaccurate.

The Veterans Court did not rule that treatise evidence

can only be considered if it is accompanied by a medical expert opinion. The Veterans Court explicitly stated that medical treatises, standing alone, "may provide sufficient evidence of a causal connection when it discusses generic relationships with a degree of certainty so that the causal connection is based on objective facts rather than on an unsubstantiated lay medical opinion." A 11 (internal quotations and citation omitted). The Veterans Court further explained that this court has held that a veteran may use treatise evidence to establish a nexus without a supporting medical opinion "in an appropriate case." *Id.* (citing *Hensley v. West*, 212 F.3d 1255, 1265 (Fed. Cir. 2000)). In light of this precedent, the Veterans Court held that the Board did not err by dismissing the treatise evidence because it was too uncertain to be considered without a supporting medical opinion, i.e., that this was not an "appropriate case" to consider such evidence without a supporting opinion. The Veterans Court, moreover, noted that "the treatise evidence submitted discusses back problems and their etiologies *generally*, supporting the Board's conclusion that a supporting medical opinion was required." A 12 (emphasis added). This discussion makes clear that, contrary to Beck's assertion, the Veterans Court did not rule that treatise evidence must be accompanied by a supporting medical opinion to be considered.

Nor did the Veterans Court rule that treatise evidence could only be considered for the purpose of establishing a nexus. In section B of its opinion, the Veterans Court explicitly addressed Beck's argument that "the Board should have evaluated the credibility of the examiner's statements given the treatise evidence." A 12. It found that, in light of the general nature of treatise evidence, it was "unclear how this information would impeach the VA examiner's competence." A 13. Furthermore, the Veter-

ans Court concluded that Beck "had not met his burden in demonstrating that the Board erred in finding the examiner and his opinion competent" because the treatise evidence was insufficient to undermine the Board's conclusion. *Id.* Additionally, the Veterans Court did not rule that the Board was only required to consider treatise evidence for the purpose of impeachment if the evidence was supported by a medical opinion or independently supported a nexus.

As the above discussion demonstrates, Beck's first and second arguments are premised on an incorrect reading of the Veterans Court's opinion. The Veterans Court never made the rulings that Beck asserts are statutory misinterpretations. Because the Veterans Court did not make any of these rulings, this appeal does not involve a challenge to an interpretation relied upon by the Veterans Court. Beck's first and second arguments, therefore, do not present an issue over which we have subject matter jurisdiction.

Turning to Beck's last argument that we have rule of law subject matter jurisdiction pursuant to *Morgan v. Principi*, 327 F.3d 1357 (Fed. Cir. 2003), we conclude that we do not posses this type of jurisdiction in this case. In *Morgan*, we held that

> in a case . . . in which the decision below regarding a governing rule of law would have been altered by adopting the position being urged, this court has jurisdiction to entertain the matter, even though the issue underlying the stated position was not "relied on" by the Veterans Court.

327 F.3d at 1363. On the basis of *Morgan*, Beck asserts that we have jurisdiction over this appeal because *Nieves-Rodriguez v. Peake*, 22 Vet. App. 295 (2008), established a rule of law that the Veterans Court failed to address and

that, if it had adopted his position, the outcome of the decision below would have been altered.

In *Nieves-Rodriguez*, the Veterans Court stated that the three factors discussed in 702 of the Federal Rules of Evidence[4] are

> important, guiding factors to be used by the Board in evaluating the probative value of medical opinion evidence . . . . Therefore, where the Board favors one medical opinion over another, the Court will review the Board's decision to determine whether these criteria have been met or properly applied.

22 Vet. App. at 302. Beck asserts that he urged the Veterans Court to find that the Board erred by failing to evaluate the sufficiency of the examiner's report as required by *Nieves-Rodriguez*. Appellant's Br. at 16. The Veterans Court did not mention the *Nieves-Rodriguez* factors when it evaluated the Board's decision. On the basis of this omission, Beck asserts that, because "the decision below would have been altered by the [Veterans Court] adopting the position urged by Appellant," we have rule of law jurisdiction over this case.

In response, the government argues that we do not have subject matter jurisdiction because *Nieves-Rodriguez* did not establish a rule of law within the meaning of *Morgan*, and even if it did, Beck has not established that the outcome below would have been different if the Veter-

---

[4]     Expert testimony may be received from a suitably qualified expert under the following conditions: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert witness has applied the principles and methods reliably to the facts of the case. *See* Fed. R. Evid. 702.

ans Court had adopted his position. Even assuming that *Nieves-Rodriguez* established a rule of law within the meaning of *Morgan*, an issue upon which we express no opinion, we still do not have subject matter jurisdiction over Beck's appeal.

Beck's argument fails because he has not established that the outcome below would have been different if the Veterans Court adopted his position. With respect to the Board's decision to assign greater weight to the examiner's opinion, the Veterans Court noted that the Board reached this decision "because [examiner's opinion] was based on a review of the veteran's medical history; whereas there is no evidence that the veteran's private doctors ever reviewed his service treatment records." A 38. The Board noted, moreover, that "[w]hile the showing of no back disability at the time of separation was of particular note to the VA examiner, none of the private opinions even mentioned the lack of a back disability in service or the lack of any treatment for a number of years after service." *Id.*

In other words, the Board assigned greater weight to the examiner's opinion for three reasons: (1) his opinion was based on a review of Beck's entire medical history; (2) he was the only expert to consider the fact that Beck had no back disability at discharge; and (3) Beck did not receive any treatment for a number of years after discharge. These findings on the credibility and weight of the evidence are factual determinations that the Veterans Court reviews for clear error. 38 U.S.C. § 7261(a)(4). Of the three reasons cited by the Board, the treatise evidence only undermines the third reason because it disclosed that "most people with back pain do not seek medical treatment; back pain is typically recurrent; and the absence of back pain on any given day does not imply normal lumbar function." A 66. In light of this fact, Beck

cannot establish that if the Veterans Court had applied the *Nieves-Rodriguez* factors the outcome would have been different because, even if the treatise evidence was considered as part of this inquiry, the Board's factual findings were still supported by two independent reasons; i.e., the factual findings were not clearly erroneous. Beck cannot, therefore, meet the requirements of *Morgan*.

For the reasons discussed above, we lack jurisdiction to hear this appeal because it does not involve the interpretation of a statute or rule of law jurisdiction under *Morgan*.

COSTS

Each party shall bear its own costs.

**DISMISSED**