﻿Citation Nr: AXXXXXXXX
Decision Date: 10/31/19 Archive Date: 10/30/19

DOCKET NO. 190328-7102
DATE: October 31, 2019

ORDER

Entitlement to service connection for right lower extremity radiculopathy is denied.

Entitlement to service connection for left lower extremity radiculopathy is denied.

REMANDED

Entitlement to service connection for neurogenic bladder is remanded.

Entitlement to service connection for gastroesophageal reflux disease (GERD) is remanded.

FINDINGS OF FACT

1. The evidence of record does not demonstrate a diagnosis of right lower extremity radiculopathy.

2. The evidence of record does not demonstrate a diagnosis of left lower extremity radiculopathy. 

CONCLUSIONS OF LAW

1. The criteria for service connection for right lower extremity radiculopathy have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.303 (2019).

2. The criteria for service connection for left lower extremity radiculopathy have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.303 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from June 1987 to June 2011. 

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from an August 2018 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO). 

The Veteran submitted a notice of disagreement in September 2018 and elected to participate in the Rapid Appeals Modernization Program (RAMP) process. The Veteran selected a higher-level review through RAMP. A higher-level review decision was issued in February 2019. In March 2019, the Veteran submitted an appeal to the Board requesting direct review. 

The Veteran asserts that his neurogenic bladder condition is secondary to his lumbar spine condition, and specifically indicated that it is secondary to radiculopathy. The Veteran also contends that his GERD is secondary to his service-connected conditions that have required the use of NSAIDs (non-steroidal anti-inflammatory drugs). 

Service Connection

Generally, to establish service connection a Veteran must show: “(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service.” Davidson v. Shinseki, 581 F.3d 1313, 1315–16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

1. Entitlement to service connection for right lower extremity radiculopathy

2. Entitlement to service connection for left lower extremity radiculopathy 

The Veteran has claimed service connection for right and left lower extremity radiculopathy. However, to establish a “current disability” there must be competent evidence that a disability exists at the time of filing for benefits or during the period of review. Chelte v. Brown, 10 Vet. App. 268 (1997). This disability must be a present disability and not an example of a past disability or one-time treatment for an illness. Degmetich v. Brown, 104 F.3d 1328, 1332. 

The Veteran’s service treatment records do not indicate that the Veteran was treated for or diagnosed with bilateral lower extremity radiculopathy while in service. Additionally, the evidence of record does not document any diagnosis of right and left lower extremity radiculopathy after service. In fact, the medical documentation does not reveal any reference to the Veteran having a condition that could be associated with bilateral lower extremity radiculopathy. Moreover, the May 2018 VA examination also acknowledged that the claims file is silent for evidence of radiculopathy. 

Based on the foregoing, the Board finds that the first element of service connection, the existence of present right and left lower extremity radiculopathy conditions, has not been established. As the preponderance of the evidence is against the claim for service connection for right and left lower extremity radiculopathy, the benefit-of-the-doubt rule is not applicable, and the claims must be denied. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. at 55. 

REASONS FOR REMAND

While the Board regrets the additional delay, the Board must remand the Veteran’s claims for service connection for neurogenic bladder and GERD. 

1. Entitlement to service connection for neurogenic bladder 

In April 2018, the Veteran submitted a disability benefits questionnaire (DBQ) from his private physician. The DBQ diagnosed the Veteran with neurogenic bladder and opined that the Veteran’s lower back condition is likely the cause of his urinary frequency. The private physician explained that "the Veteran has urinary frequency that is likely secondary to his service-connected lower spinal condition. As the nerves that supply the bladder exit the spinal canal, they can become irritate or damaged. When this happens to the bladder nerves, patients may experience urinary dysfunction such as urinary frequency or incontinence." Therefore, the private physician found that the Veteran's service-connected lower spinal condition is likely the cause of the urinary symptoms. However, the Board notes that the private physician did not review the VA claims file, which calls into question whether the assessment was based on a fully accurate history of the Veteran's disability. Medical evidence is considered probative when it is factually accurate, fully articulated, and provides sound reasoning for the conclusion. See Nieves–Rodriquez v. Peake, 22 Vet. App. 295, 304 (2008).

In May 2018, the Veteran was afforded a VA bladder examination. The examiner did not diagnose the Veteran with neurogenic bladder, but, diagnosed the Veteran with voiding dysfunction. The May 2018 examiner specifically indicated that the Veteran's voiding dysfunction was of unknown etiology, yet, the examiner opined that the Veteran's voiding dysfunction is less likely than not proximately due to or the result of neurological impairments of the lower spine. The examiner explained that the claims file is silent for evidence of radiculopathy and intervertebral disc syndrome. Although the examiner noted subjective complaints of right leg pain, there was no objective evidence of radiculopathy noted upon examination. However, the examiner failed to address whether the Veteran's service-connected degenerative arthritis of the lumbar spine could be the cause of his voiding dysfunction. 

The RO acknowledged that the there was a conflict tin the medical evidence of record and requested an additional VA examination to resolve the conflict. However, in doing so, the same examiner that performed the May 2018 VA examination reviewed the medical evidence to resolve the conflict. The examiner simply stated that the claims file is silent for neurological problems due to degenerative arthritis of the lumbar spine and that a nexus had not been established between the Veteran's voiding dysfunction and his degenerative arthritis of the lumbar spine. Unfortunately, the VA examiner did not fully articulate the rationale for the opinion. See Id.

Furthermore, as there is clearly a conflict in the medical evidence of record, the Veteran should have been provided an independent examination to resolve the conflict. As the Veteran has not been afforded such an examination, the Board finds the Veteran should be referred for an independent medical examination to resolve the conflict. 38 U.S.C. § 5109(a). 

2. Entitlement to service connection for GERD

In April 2018, the Veteran submitted a DBQ from his private physician which diagnosed the Veteran with GERD and opined that the Veteran’s GERD is related to his military service. The private physician explained that "the Veteran has a service-connected pain condition for which he was given NSAIDs. NSAIDs, such as Motrin, are a well-established cause of stomach irritation. This irritation causes acid to build up on the stomach and subsequent refluxing into the esophagus." The private physician determined that the Veteran's chronic use of NSAIDs for his service-connected pain condition is likely the cause of his GERD. 

The Board notes that the private physician did not review the VA claims file, which calls into question whether the assessment was based on a fully accurate history of the Veteran’s disability. Medical evidence is considered probative when it is factually accurate, fully articulated, and provides sound reasoning for the conclusion. See Nieves–Rodriquez, 22 Vet. App. 295, 304 (2008).

Despite the possibility that the private physician may not have had all of the facts necessary to fully contemplate the etiology of the Veteran's diagnosed GERD, the VA did not meet its duty to assist when it did not refer the Veteran for a VA examination to address whether the Veteran’s GERD is at least as likely as not service connected. The VA must obtain an examination in service connection claims when there is an indication that the current disability may be associated with the Veteran’s service and there is a lack of sufficient evidence to decide the claim. See McClendon v. Nicholson, 20 Vet. App. 79, 83 (2006). 

Clearly, based upon the DBQ from the Veteran's private physician, there is an indication that the Veteran's GERD may be associated with his military search. Accordingly, the Board finds that the Veteran should have been scheduled for a VA examination to determine whether there is a causal relationship between his GERD and his service-connected disabilities. 30 U.S.C § 5103A; 38 C.F.R. § 3.159(c); see also McLendon, 20 Vet. App. 79, 83 (2006). 

For these reasons, the claim for service connection for GERD is remanded in order to obtain a VA examination that addresses whether it is at least as likely as not that the Veteran’s GERD is secondary to, or aggravated by, his service-connected disabilities. 

The matters are REMANDED for the following action:

1. Obtain all of the Veteran’s VA medical records and associate them with the record. See 38 C.F.R. § 3.159(c).

2. After associating any additional records with the claims file, schedule the Veteran for an independent medical examination to determine the current nature and severity of his neurogenic bladder. The record, to include a complete copy of this Remand, must be made available to the examiner, and all necessary tests should be accomplished.

The independent medical examiner should specifically address whether the Veteran has a neurogenic bladder condition, or other urological condition, and if so, whether it is at least as likely as not that the condition (i.e. a 50 percent probability or greater) was caused by his service-connected degenerative arthritis of the lumbar spine. The examiner must also address the findings of the May 2018 and July 2018 VA bladder examinations, and the April 2018 neurogenic bladder DBQ. 

A rationale for any opinions expressed should be set forth. If the examiner cannot provide an above opinion without resorting to speculation, he/she should explain why an opinion cannot be provided (e.g. lack of sufficient information/evidence, the limits of medical knowledge, etc.). 

The examiner is advised that the Veteran is competent to report symptoms and treatment and that his reports, including his reports as to the onset and chronic nature of his symptoms, must be considered, along with the other evidence of record, in formulating the requested opinions.

3. Schedule the Veteran for an examination to determine the nature and etiology of the claimed GERD. The examiner should obtain a complete, pertinent history from the Veteran and review the claims file in conjunction with the examination.

The examiner is advised that the Veteran is competent to report symptoms and treatment and that his reports, including his reports as to the onset and chronic nature of his symptoms, must be considered, along with the other evidence of record, in formulating the requested opinions.

Based on the examination and review of the record, the examiner is asked to provide an opinion whether it is at least as likely as not (i.e. a 50 percent probability or greater) that the Veteran’s GERD is secondary to his use of NSAIDs due to his service-connected disabilities.

Any evaluations, studies, or tests deemed necessary by the examiner should be accomplished and any such results must be included in the examination report.

A complete rationale for any opinion expressed must be provided. If the examiner is unable to reach an opinion without resort to speculation, he or she should explain the reasons for this inability and comment on whether any further tests, evidence or information would be useful in rendering an opinion.

4. After completing the requested actions, and any additional actions deemed warranted, the RO should readjudicate the claims on appeal. If the benefit sought on appeal remains denied, the Veteran and his representative should be furnished a supplemental statement of the case and given the opportunity to respond thereto. The case should then be returned to the Board for further appellate consideration, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

 

 

K. A. KENNERLY

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board B. Temple, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.