Citation Nr: 1331581 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 10-39 349 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUE

What evaluation is warranted for asbestosis from March 3, 2009?


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

Appellant and Spouse


ATTORNEY FOR THE BOARD

N. Holtz, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1953 to December 1959. 

The Veteran's claim comes before the Board of Veterans' Appeals (Board) on appeal from an October 2008 rating decision of the Department of Veterans Affairs' (VA) Regional Office (RO) in Nashville, Tennessee which assigned an initial noncompensable rating for asbestosis effective August 31, 2001. The Veteran thereafter promptly filed a timely notice of disagreement. In a March 2009 rating decision the Cleveland, Ohio RO granted a 60 percent rating effective January 16, 2009.

In a May 2009 rating decision the Nashville RO proposed to reduce the evaluation for asbestosis to a noncompensable rating based on a finding that the March 2009 rating decision was clearly and unmistakably erroneous. In a February 2010 rating decision the Nashville RO reduced the evaluation for asbestosis to a noncompensable rate, however, the assigned an effective April 1, 2010. 

In March 2010, the Veteran filed another notice of disagreement, and a statement of the case was issued in September 2010. The Veteran perfected his appeal later that month.

As noted in the November 2012 remand, given the fact that the appellant has continuously pursued entitlement to a higher rating for asbestosis since the initial rating, and given that the RO ultimately did not assign the reduction of the Veteran's 60 percent rating until April 1, 2010, rather than January 16, 2009, as should have been the case if the RO reduced based on a finding of clear and unmistakable error, this claim cannot be reviewed under the standards governing clear and unmistakable error. Simply put, there is no final rating decision, and hence, the rules governing clear and unmistakable errors are not applicable. 38 U.S.C.A. § 7105 (West 2002). Rather, review of this case is governed by the standards set forth in Fenderson v. West, 12 Vet. App. 119 (1999) (providing that where a claim for a higher initial evaluation stems from an initial grant of service connection for the disability at issue, such as the situation in this case, multiple (staged) ratings may be assigned for different periods of time during the pendency of the appeal).

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2012). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

For the period beginning March 3, 2009, and continuing to the present, the Veteran has not demonstrated pulmonary symptomatology related to asbestosis.


CONCLUSIONS OF LAW

1. For the period from March 3, 2009 through March 31, 2010, the criteria for a rating in excess of 60 percent for asbestosis have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.7, 4.96, 4.97, Diagnostic Code 6833 (2012).

2. For the period beginning April 1, 2010, the criteria for a compensable rating for asbestosis have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.7, 4.96, 4.97, Diagnostic Code 6833.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2012). 

The Veteran's claim arises from an appeal of the initial evaluation following the grant of service connection. Courts have held that once service connection is granted the claim is substantiated, additional notice is not required and any defect in the notice is not prejudicial. Dunlap v. Nicholson, 21 Vet. App. 112, 117 (2007). Therefore, no further notice is needed under VCAA.

VA's duty to assist the Veteran in the development of the claim includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Board finds that all necessary development has been accomplished. See Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains the Veteran's service treatment records, as well as post-service reports of VA and private treatment and examination. 

The Veteran's statements in support of the claim are of record, including testimony provided at a November 2009 Decision Review Officer hearing. The hearing focused on the elements necessary to substantiate his increased rating claim and the Veteran, through his testimony and his representative's statements, demonstrated that he had actual knowledge of the elements necessary to substantiate the claim for benefits. As such, the Board finds that, consistent with Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Decision Review Officer complied with the duties set forth in 38 C.F.R. § 3.103(c)(2) (2012). Further, the Veteran had the opportunity to request a hearing before a Veterans Law Judge, and declined to do so. The Board can adjudicate the claim based on the current record. 

The results of a July 2013 VA examination, as requested by the May 2013 remand, are of record. See Stegall v. West, 11 Vet. App. 268, 271 (1998). The Board acknowledges that the May 2013 remand specifically instructed that pulmonary function test results must be obtained on remand. The ensuing July 2013 examiner relied on a March 2013 pulmonary function test that, although existing at the time of the May 2013 remand, was not of record when the case was remanded. Nevertheless, there is no prejudice to the Veteran, and review may proceed. As discussed in detail below, the Veteran's pulmonary function is not in dispute; the decision concerning the appropriate rating for his service-connected asbestosis turns solely on whether any current pulmonary symptoms are attributable to that service-connected asbestosis. As the July 2013 examiner has provided a compelling, fully-supported opinion (addressing all pulmonary function test results since March 2009) that such symptoms (which would otherwise qualify the Veteran for a compensable rating) are unrelated to asbestosis, the actual severity of those symptoms in July 2013 as opposed to March 2013 does not affect the appeal. In short, there has been substantial compliance with the Board's remand, and the Veteran is not prejudiced. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that where a medical opinion obtained was sufficient to resolve the issue for which the opinion was requested, there was substantial compliance with the Board's request). 

The Board has carefully reviewed the Veteran's statements and the medical evidence of record, and concludes that no available outstanding evidence has been identified. For the above reasons, no further notice or assistance to the appellant is required to fulfill VA's duty to assist the appellant in the development of the claim. 38 C.F.R. § 3.159(c).

Disability Ratings

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10.

Where service connection has been granted and the assignment of an initial evaluation is disputed, separate evaluations may be assigned for separate periods of time based on the facts found. In other words, the evaluations may be "staged." Fenderson, 12 Vet. App. at 125-26. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7; see also Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007).

In evaluating a claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1335 (2006). The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. The Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007) (observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this function, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498, 511-12 (1995). 

Where there is conflicting medical evidence, the Board may not ignore or disregard any medical professional's opinion, but may favor one medical opinion over by providing an adequate statement of reasons or bases. See Willis v. Derwinski, 1 Vet. App. 66, 70 (1991). A medical opinion is most probative if it is factually accurate, fully articulated, and based on sound reasoning. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

Asbestosis is rated under 38 C.F.R. § 4.97, Diagnostic Code 6833. That code, relying on the General Rating Formula for Interstitial Lung Disease, provides that if asbestosis symptoms result in forced vital capacity (FVC) results of 75 to 80 percent predicted, or if diffusion capacity of the lung for carbon monoxide by single breath method (DLCO) results of 66 to 80 percent predicted then a 10 percent disability rating is in order. If FVC is 65 to 74 percent predicted, or if the Veteran's DLCO is 56 to 65 percent predicted then a 30 percent disability rating is in order. Where FVC is 50 to 64 percent of that predicted, or if DLCO results are 40 to 55 percent of that predicted, or if the Veteran's maximum exercise capacity is 15 to 20 ml/kg in oxygen consumption with cardiorespiratory limitation, a 60 percent rating is in order. Finally, a 100 percent rating is warranted if FVC is less than 50 percent predicted, DLCO is less than 40 percent predicted, if the Veteran has a maximum exercise capacity less than 15 ml.kg in oxygen consumption with cardiorespiratory limitation, if the Veteran has cor pulmonale or pulmonary hypertension, or if he requires outpatient oxygen therapy. 

Pulmonary function tests must be conducted to properly evaluate asbestosis. The post-bronchodilator results of these tests must be considered to assign the appropriate rating. 38 C.F.R. § 4.96.

As discussed below, the Veteran has multiple non-service-connected pulmonary disabilities that cause pulmonary symptoms, including sleep apnea and chronic obstructive pulmonary disease (COPD). Symptoms solely attributable to those disabilities cannot be considered in determining an appropriate rating. See, e.g., Mittleider v. West, 11 Vet. App. 181, 182 (1998) (holding that where it is not possible to distinguish the effects of a nonservice-connected condition from those of a service-connected one, the reasonable doubt doctrine dictates that all symptoms be attributed to the Veteran's service-connected disability).

Evidence

As background, the Veteran has only been diagnosed with asbestosis by a single provider, Muhammad Shaukat, M.D. In April 2003, he noted the appellant's report that he was exposed to asbestos while servicing aircraft. Pulmonary function studies showed mild to moderate obstructive changes, moderate to severe restrictive disease, but a normal diffusion capacity. The diagnoses were chronic obstructive pulmonary disease, and a possible history of asbestos exposure with restrictive changes noted on pulmonary function studies.

In a May 2003 medical record, Dr. Shaukat noted that pulmonary function studies revealed severe obstructive changes. His pertinent clinical assessment was a history of asbestos exposure with chest x-ray findings not consistent with asbestosis related disease. In July 2003, he diagnosed the Veteran with asbestosis, and in an October 2003 record, he found that the abnormalities found on computerized tomography scan were due to his in-service asbestos exposure as an airplane mechanic. Later, in January 2005, Dr. Shaukat opined that the Veteran's "current condition is related to the exposure from the asbestos he received while in the service . . . ."

According to a March 2009 private treatment note from Highland Rim Respiratory Specialists, the examiner noted that the Veteran had "severe obstructive pulmonary disease, and I believe mild asbestosis based on exposure history and physical exam, [but] not much has shown up on his chest films. He was evaluated at the VA for this and they did not buy it based primarily on this normal diffusing capacity and overwhelming evidence for COPD, always a reasonable argument." (emphasis added). The examiner noted that pulmonary function demonstrated a severe obstruction, with "[b]orderline mild restriction." 

Highland Rim Pulmonary Function Test Results, March 2009 - April 2010
DATE
FVC
DLCO
March 3, 2009
51.9% (prebronchodilator)
100.4% (prebronchodilator)
March 24, 2009
63.3% (prebronchodilator)
Not provided
June 23, 2009
53.7% (prebronchodilator)
Not provided
October 22, 2009
59.8% (prebronchodilator)
105.5% (prebronchodilator)
April 27, 2010
58.2% (prebronchodilator)
92.4% (prebronchodilator)

An October 2009 Highland Rim treatment note indicated that the Veteran had "severe obstructive pulmonary disease," and a history of obstructive sleep apnea. A CT scan revealed a 9mm, unchanged, left upper lobe, noncalcified pulmonary nodule that was "likely benign." In addition to the FVC values noted on the chart above, the examiner determined that pulmonary function analysis/spirometry revealed a Forced Expiratory Volume in one second (FEV1) of 40.9%, representing a "severe obstructive ventilatory defect." Lung volumes indicated "air trapping and diffusing capacity [was] normal." The examiner diagnosed the Veteran with, in addition to severe COPD and sleep apnea, "mild asbestosis based on history and clinical exam." 

In November 2009, the Veteran testified at a Decision Review Officer Hearing that he had experienced respiratory problems for years, and that a VA doctor, Dr. Lim, suggested to him that the type of work he did in the military (i.e., work around asbestos) might have been the cause of his breathing problems. The Veteran also referenced Dr. Shaukat, who "theorized" that the Veteran's exposure to asbestos "probably was a major factor" in his breathing problems.

VA provided the Veteran with an examination in January 2010. The Veteran reported dyspnea on exertion, which was aggravated by smoke and exhaust fumes, and seemed worse in hot weather. He also identified chest pain that felt worse in cold weather. He denied wheezing, but had a "usually unproductive" cough at times. Pulmonary function tests revealed an FVC of 63% prebronchodilator, and 61% postbronchodilator. DLCO was 85% prebronchodilator. The examiner interpreted the results as demonstrating "moderate, minimally reversible airway obstruction" with associated air-trapping, but "normal" diffusion. The examiner reviewed the private treatment records, including those of Dr. Shaukat which associated some of the Veteran's pulmonary symptoms with asbestos exposure. 

The examiner opined that the Veteran's dyspnea on exertion was multifactorial, with contributions from both heart and lung disease, with the aspects due to lung disease related to COPD. The examiner continued, "[p]ulmonary function study abnormalities are (more likely than not) due to COPD; most consistent with type B-dominant (chronic bronchitis) disease. Once again, diffusion (the most sensitive indicator of asbestos-related parenchymal injury) is normal and there is no evidence of significant restriction (i.e., a reduced [total lung capacity]." 

The examiner continued, quoting an un-cited source as follows: 

[t]he characteristic lung function in abnormalities in patients with asbestosis include: 
- Reduced lung volumes, particularly the vital capacity and total lung capacity (TLC);
 - Diminished single breath DLCO
 - Decreased pulmonary compliance
- Absence of airflow obstruction by spirometry (normal ratio of the forced expiratory volume in one second to forced vital capacity.

He stated that "[t]he earliest physiologic abnormalities detected in asbestos-exposed patients are reductions in the DLCO and pulmonary compliance," with the pulmonary compliance reduction manifesting as a reduction in volume. The examiner acknowledged that the Veteran's history "supports the possibility of asbestos exposure," but stated that there was no specific radiologic evidence or laboratory (pulmonary function test results) evidence of significant asbestos-related lung injury.

VA obtained a new opinion concerning the severity of the Veteran's asbestosis in January 2013. The examiner cited, in addition to pulmonary function test results already addressed, a July 2012 VA pulmonary function test. Per that test, the Veteran's prebronchodilator FVC was 49%, and postbronchodilator FVC was 55%. His prebronchodilator DLCO was 44%. The examiner did not change his opinion regarding the severity of the Veteran's asbestosis-related symptoms.

The Veteran underwent VA pulmonary function testing in March 2013. At that time, the prebronchodilator FVC was 45%, improving to 50.8% postbronchodilator. The DLCO result was 80% prebronchodilator. The interpreting examiner stated that the results reflected a severe obstructive defect, moderate air trapping, no restrictive defect, and no diffusion defect. The examiner diagnosed severe obstructive effect, consistent with COPD. 

Finally, VA provided the Veteran with a new examination in July 2013. The Veteran reported increasing shortness of breath, dating back about 25 years. He was only able to walk about 150 feet, wearing portable oxygen supplied by nasal cannula; thereafter, he would have to stop and rest. The examiner relied on the March 2013 pulmonary function test results, as delineated above. He stated that the most recent pulmonary function test revealed, among other findings, that the Veteran did not have a restrictive defect. He stated that the test showed normal total lung capacity and normal DLCO; both of those findings were inconsistent with asbestosis. The examiner explained that the Veteran's decreased Forced Expiratory Volume in one second value was characteristic of an obstructive defect, which, in the Veteran's case, was related to severe COPD. He stated that "[t]he spirometry finding in asbestosis is not an obstructive defect." Rather, the FVC is low in asbestosis cases 

because asbestosis is characterized by a restrictive lung defect. A restrictive lung defect does cause the FVC to fall, and a low FVC is one characteristic finding in the presence of a restrictive defect. However, the defining diagnostic characteristic of a restrictive lung defect is not the FVC. The diagnostic characteristic of a restrictive defect is low Total Lung Capacity (TLC), which is a lung volume test value.
 In the lung function testing of this patient, the spirometry data (FEV1 values and FEV1:FVC ratio) is consistently low, undeniably indicating severe airways obstruction, consistent with chronic obstructive pulmonary disease (COPD). In an individual who is a smoker, with typical history of steady increase in symptoms, with these diagnostic spirometry findings which do not correct after the appropriate treatment, and with typical demonstrated history of decrease in these spirometry values over time, these results are clearly diagnostic of COPD. As previously mentioned, in the presence of severe COPD, it is also frequently characteristic that the FVC may also be low, as is shown on this patient's spirometry data. Also in COPD, there is commonly some variation in the FEV1 and FVC values on different occasions, indicating a mild degree of dynamic variation in obstruction, as is seen in this patient's spirometry results. 
 In these lung function tests, there is some variation in the FEV1 and FVC results from test to test, but spirometry data on all dates show severe obstructive defect. These results are typical of COPD. 
. . .
 In summary, it is not likely that asbestos caused these abnormal spirometry findings. Specifically, it is not likely that asbestosis caused the low FVC values. This is true for all spirometry data from 2008 to 2013 . . . .

The examiner explained, in response to the Board's question on remand, that the discrepancy in the FVC and Total Lung Capacity results on pulmonary function testing was because the FVC was due to COPD, not asbestosis, which would have affected the Total Lung Capacity as well. 

The examiner further explained that the Veteran's consistent evidence of normal diffusing capacity (DLCO) over time does not support a diagnosis of asbestosis, as that disease typically causes a decrease in diffusing capacity that does not improve with time. In contrast to asbestosis symptoms, the examiner noted, "[t]his consistently normal diffusing capacity in the presence of severe COPD is typical of COPD due to chronic bronchitis." In providing the opinion, the examiner noted that the July 2012 DLCO value (44%) was much lower than the normal values recorded during all other pulmonary function tests, including those performed after that date. The examiner stated that "[t]his strongly suggests that the result [in July 2012] is an inaccurate result due to some technical problems in the testing procedure."

Analysis

The Board finds that the Veteran has not demonstrated symptoms due to asbestosis that warrant a rating in excess of 60 percent for the period of March 3, 2009 through March 31, 2010, or for a compensable rating at any time thereafter. In short, the evidence clearly demonstrates that the Veteran's pulmonary symptoms are due to his COPD, and not his asbestosis diagnosis. 

Initially, the Veteran's pulmonary function test results, if attributed to the service-connected asbestosis disorder, would warrant compensable ratings throughout the appellate period. In 2009, the pulmonary function tests showed FVC results in the range of 40 to 55 percent, which would warrant a 60 percent rating; the Board notes, however, that the only FVC values from 2009 were prebronchodilator results, not the postbronchodilator results specified in the rating criteria. See 38 C.F.R. § 4.96(d)(4). In 2010, the FVC values were improved, with postbronchodilator FVC results of 63 percent; such would have warranted a 30 percent rating. The FVC results from July 2012 and March 2013, as well as the DLCO result from July 2012, were reduced from the January 2010 result, and would meet the criteria for a 60 percent rating. 38 C.F.R. § 4.97, Diagnostic Code 6833.

The Board acknowledges that in situations where the symptoms of non-service-connected and service-connected disabilities cannot be distinguished, the doctrine of reasonable doubt found at 38 C.F.R. § 3.102 requires that all such symptoms be considered in evaluating the Veteran's disability. See Mittleider, 11 Vet. App. at 182. The opposite is not true, however; in situations where the symptoms associated with non-service-connected disabilities can be distinguished from those of the service-connected disability, the symptoms of the non-service-connected disability are not to be considered when determining the appropriate rating for the service-connected disability. 

There is very little evidence that could be construed to potentially associate the Veteran's low FVC values with his asbestosis. In January 2005, Dr. Shaukat stated that the appellant's "current condition" was related to asbestos exposure in service. As discussed in the November 2012 Board decision, Dr. Shaukat failed to support his opinion with any pulmonary function test results. Further, Dr. Shaukat failed to distinguish any symptoms potentially related to asbestosis from any symptoms that were due to his severe COPD. In short, Dr. Shaukat's opinion is insufficiently supported to provide any probative value. See Nieves-Rodriguez, 22 Vet. App. at 302. 

In March and October 2009, the provider at Highland Rim Respiratory Specialists diagnosed the Veteran with "mild asbestosis," and did not specifically attribute any symptoms to that disability. The Highland Rim provider also provided a diagnosis of "severe COPD." 

Finally in this regard, the Board notes the Veteran's testimony at his November 2009 hearing concerning treatment from Dr. Lim, who suggested to him that his military work around asbestos might have been the cause of his breathing problems. Although the Veteran is competent to report statements from Dr. Lim, see Buchanan v. Nicholson, 451 F.3d 1331, 1335 (2006), the opinion ultimately provided is that his symptoms "might" be related. That opinion is speculative, and thus is not probative of the matter. See Nieves-Rodriguez, 22 Vet. App. at 302. 

In contrast to Dr. Shaukat's opinion, and, to the extent that the Highland Rim provider suggested that there was symptomatology related to asbestosis, the July 2013 VA examiner's opinion that the Veteran's decreased pulmonary function is unrelated to any asbestosis diagnosis is consistent with the facts of the case, relies on all available pulmonary function testing data, is fully articulated, and is based on sound reasoning. Id. The examiner provides a specific discussion detailing why the Veteran's low FVC values are unlikely to be due to asbestosis, explaining that were the FVC values related to asbestosis, one would expect to see decreased DLCO and Total Lung Capacity values as well. He explained why low FVC values are consistent with the Veteran's COPD condition, and distinguished between obstructive and restrictive pulmonary symptoms. In short, the opinion, which the Board has quoted at length due to its thorough treatment of the matter, is highly probative of the matter and clearly demonstrates that the Veteran's pulmonary symptoms that have been present throughout the period from March 3, 2009 are unrelated to his asbestosis diagnosis. 

Further, in March 2009, the Highland Rim Respiratory Specialists treatment provider acknowledged that assigning the Veteran's symptoms to COPD, as opposed to asbestosis, was "reasonable." That opinion provides further support for the July 2013 examiner's opinion.

The Board also notes two additional examination reports that it has determined are not probative. The January 2010 and January 2013 VA examination reports and the associated opinions are unclear, as discussed in the May 2013 remand; that lack of clarity was the reason the Board sought a new examination at that time. As the examiner who performed those two examinations opined that the Veteran did not have a significant asbestos-related injury in both of those reports, but failed to clearly articulate the rationale for that opinion, the Board finds those reports (including the opinions contained therein, which are against the Veteran's claim) to not be probative of the matter. Id.

In conclusion, the weight of the evidence is against the Veteran's claim for a rating in excess of 60 percent for asbestosis for the period of March 3, 2009 through March 31, 2010, and for a compensable rating since April 1, 2010, as it is evident that his symptoms during that time have not been due to asbestosis. 

As the Veteran has not demonstrated symptoms related to asbestosis during the time on appeal, further consideration of the appropriate rating on an extraschedular basis is not warranted. See Thun v. Peake, 22 Vet. App. 111, 115 (2008).

Similarly, the Veteran has not presented any evidence that his service-connected asbestosis, or any other service-connected disability, has rendered him unemployable. See Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001) (holding that a claim for entitlement to a total disability rating is raised where a Veteran: (1) submits evidence of a medical disability; (2) makes a claim for the highest rating possible; and (3) submits evidence of unemployability. As the Veteran has not met this criteria, consideration. As such, consideration of a total disability rating for compensation purposes based on individual unemployability due to service-connected disabilities is not warranted. See Jackson v. Shinseki, 587 F.3d 1106, 1109-10 (2009) (holding that an inferred claim for a total disability rating is raised as part of an increased rating claim only when the Roberson requirements are met). 


ORDER

Entitlement to a rating in excess of 60 percent for asbestosis for the period from March 3, 2009, through March 31, 2010, is denied.

Entitlement to a compensable rating for asbestosis for the period beginning April 1, 2010, is denied.


____________________________________________

Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs