Citation Nr: 1518698 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 10-27 828 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Togus, Maine


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder.


REPRESENTATION

Appellant represented by: Neil B. Riley, Agent


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Andrew Mack, Counsel


INTRODUCTION

The Veteran had active service from September 1975 to February 1977.

This matter initially came to the Board of Veterans' Appeals (Board) on appeal from a rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Togus, Maine. In March 2011, the Veteran testified during a videoconference hearing before one of the undersigned Veterans Law Judges (VLJs). A transcript is of record.

In August 2011, the Board granted the Veteran's application to reopen his previously denied claim and remanded and recharacterized the claim as entitlement to service connection for an acquired psychiatric disorder. See Clemons v. Shinseki, 23 Vet. App. 1, 8 (2009). Thereafter, in January 2013, the Board submitted a request for a Veterans Health Administration (VHA) medical opinion; the requested opinion was obtained in February 2013, and provided to the Veteran for his review.

In November 2013, the Board denied the claim. In June 2014, the United States Court of Appeals for Veterans Claims (Court) granted a June 2014 Joint Motion by VA counsel and the Veteran to vacate the Board's decision and remand the claim to the Board.

In August 2014, the Veteran's attorney requested another hearing before the Board, and such hearing was granted. In January 2015, the Veteran testified during a Board videoconference hearing before the undersigned Acting VLJ. A transcript of that hearing is also included in the claims file. At the time of the hearing, on the record, the Veteran waived his right to testify before a third VLJ. See Arneson v. Shinseki, 24 Vet. App. 379, 386 (2011). However, because the Veteran testified regarding the matter on appeal during the pendency of the appeal at separate Board hearings before a VLJ and a different Acting VLJ, the appeal must be decided by a three-judge panel. See 38 U.S.C.A. §§ 7102(a), 7107(c); 38 C.F.R. §§ 19.3, 20.707.



FINDINGS OF FACT

1. There is not clear an unmistakable evidence that any psychiatric disability pre-existed service.

2. The Veteran does not have posttraumatic stress disorder (PTSD).

3. An acquired psychiatric disorder did not have its onset during active duty service, or for many years thereafter, and is not the result of an event or injury in service. 


CONCLUSION OF LAW

An acquired psychiatric disorder was not incurred in or aggravated by active service. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.306 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA's Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). 

Here, the Veteran was sent a letter in July 2008 that fully addressed all VCAA notice elements for service connection claims and was issued prior to the initial RO decision in this matter. 38 C.F.R. § 3.159(b)(1); see also Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

In the June 2014 Joint Motion, the parties noted "that a June 2013 private medical opinion reflected [the Veteran's] allegation that, during service, 'he would often get in fights with others and would often be beaten up with the origin of the fight often being in ridicule directed at him,'" but that the Board "did not discuss whether VA had satisfied its notice obligations involving PTSD claims based on in-service personal assaults." Specifically, the parties noted that "38 C.F.R. § 3.304(f)(5) notes that if PTSD is alleged due to such a stressor, 'evidence from sources other than [the Veteran's] service records may corroborate' such an account," and that, under this provision, "VA is specifically prohibited from denying PTSD claims based on such a stressor 'without first advising [the Veteran] that evidence from sources other than [his] service records or evidence of behavior changes may constitute credible supporting evidence of the stressor and allowing him or her the opportunity to furnish this type of evidence or advise VA of potential sources of such evidence.'" The parties further stated that "[a] review of the record on appeal does not reflect that VA ever informed [the Veteran] of the alternative evidence contemplated by 38 C.F.R. § 3.304(f)(5), as required by that regulation," and that, therefore, "the Board did not adequately discuss whether VA satisfied its duty to notify [the Veteran] pursuant to 38 U.S.C. § 5103, frustrating judicial review and requiring vacatur and remand in order to consider this issue." 

38 C.F.R. § 3.304(f)(5) states the following: if a posttraumatic stress disorder claim is based on in-service personal assault, evidence from sources other than the veteran's service records may corroborate the veteran's account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. VA will not deny a post-traumatic stress disorder claim that is based on in-service personal assault without first advising the claimant that evidence from sources other than the veteran's service records or evidence of behavior changes may constitute credible supporting evidence of the stressor and allowing him or her the opportunity to furnish this type of evidence or advise VA of potential sources of such evidence. VA may submit any evidence that it receives to an appropriate medical or mental health professional for an opinion as to whether it indicates that a personal assault occurred. 38 C.F.R. § 3.304(f)(5).

In this case, the Board finds that, even considering the provisions of 38 C.F.R. § 3.304(f)(5), its duty to notify the Veteran has been met. While the parties' review of the record did not reflect that VA ever informed the Veteran of the alternative evidence contemplated by 38 C.F.R. § 3.304(f)(5), a September 2011 notice letter sent to the Veteran, as well as his attorney at that time, indicates that VA did. This letter specifically addressed the Veteran's asserted PTSD, stating: "We need specific details of the personal trauma incident(s) that resulted in post traumatic stress disorder (PTSD). It is important that you read the following information and respond to our request within 30 days from the date of this letter. If you do not respond VA may deny your claim." The letter further instructed the Veteran to complete and return an enclosed questionnaire regarding his asserted in-service stressful events, and requested that, in addition to identifying any pertinent treatment records relating to his claim, he "[i]dentify any possible sources of information and evidence such as police reports or medical treatment records for assault or rape," send "supporting statements from any individuals with whom [he] may have discussed the incident," and "[f]urnish copies of correspondence [he] may have sent to close friends or relatives in which [he] related information about the incident."

Furthermore, the enclosed form referenced in the letter, listed at the end of the letter under "Enclosures," is "VA Form 21-0781a," which is entitled "STATEMENT IN SUPPORT OF CLAIM FOR SERVICE CONNECTION FOR POST-TRAUMATIC STRESS DISORDER (PTSD) SECONDARY TO PERSONAL ASSAULT." See Mindenhall v. Brown, 7 Vet. App. 271, 274 (1994). This form requested that the Veteran list and describe the stressful incident or incidents that occurred in service that he felt contributed to his current condition, with details if possible. On each of the first two pages of this three-page form, there is a notation which reads:

OTHER SOURCES OF INFORMATION: Identify any other sources (military or non-military) that may provide information concerning the incident. If you reported the incident to military or civilian authorities or sought help from a rape crisis center, counseling facility, or health clinic, etc., please provide the names and addresses and we will assist you in getting the information. If the source provided treatment and you would like us to obtain the treatment records, complete VA Form 21-4142, Authorization and Consent to Release Information to the Department of Veterans Affairs (VA), for each provider. If you confided in roommates, family members, chaplains, clergy, or fellow service persons, you may want to ask them for a statement concerning their knowledge of the incident. These statements will help us in deciding your claim.

Moreover, the third page of the form contained the following instructions:

Please provide in the space below any other information that you feel is important for us to know that may help your claim. Let us know if you experienced any of the following or other behavior changes following the incident(s): visits to a medical or counseling clinic or dispensary without a specific diagnosis or specific ailment; sudden requests for a change in occupational series or duty assignment; increased use of leave without an apparent reason; changes in performance and performance evaluations; episodes of depression, panic attacks, or anxiety without an identifiable cause; increased or decreased use of prescription medications; increased use of over-the-counter medications; substance abuse such as alcohol or drugs; increased disregard for military or civilian authority; obsessive behavior such as overeating or undereating; pregnancy tests around the time of the incident; tests for HIV or sexually transmitted diseases; unexplained economic or social behavior changes; breakup of a primary relationship.

The Veteran did not complete and return the form. The Board finds that the September 2011 letter and enclosed form more than substantially complies with the notice requirements of 38 C.F.R. § 3.304(f)(5). In acknowledging and explaining this compliance, the Board has complied with the terms of the June 2014 Joint Motion. The Board has complied with the remaining portion of the Joint Motion in discussing whether the Veteran has PTSD, in consideration of Cohen v. Bowen, 10 Vet App. 128 (1997), below. 

VA's duty to assist the Veteran in the development of the claim includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Board finds that all necessary development has been accomplished. See Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains the Veteran's service treatment records, as well as post-service reports of VA and private treatment and examination, including records from the Social Security Administration. There are no outstanding medical records that have been identified.

Specifically, the Board notes that VA has obtained a medical nexus opinion, as sought by the August 2011 remand and the January 2013 VHA request. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance).

The Board notes Veteran's attorney's contentions during the January 2015 Board hearing that a new medical nexus opinion should be obtained, including from an independent medical examiner, and specifically given the differing psychiatric diagnoses of record. However, the medical opinion evidence of record, to specifically include a February 2013 VHA opinion, along with the evidence in its entirety, is sufficient to decide the appeal. See 38 C.F.R. § 3.159(c)(4); Barr v. Nicholson, 21 Vet. App. 303 (2007). The VHA opinion, along with the rest of the evidence of record, has been provided to the Veteran and his attorney. The only basis for any such new opinion given by the Veteran or his attorney is the conflicting medical diagnoses and opinions of record. However, while there are conflicting medical diagnoses and opinions in this case, the Board finds that the opinions of record provide sufficient medical evidence to adjudicate the appeal, and, as is explained below, that there is sufficient justification for finding certain diagnoses and opinions to be more persuasive than others. Thus, an additional opinion is not required in this case due to any medical complexity or controversy. See 38 C.F.R. § 20.901(d).

Furthermore, 38 C.F.R. 3.103(c)(2) requires that a VLJ who conducts a hearing fulfill two duties consisting of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). In this case, during both the March 2011 and January 2015 Board hearings, the VLJ and acting VLJ complied with these requirements. Thus, the Board sufficiently complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).

For the above reasons, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim. 38 C.F.R. § 3.159(c).

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). Service connection generally requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. See Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009). 

Service connection may also be warranted in the case of a pre-service disability that was aggravated during active duty service. 38 C.F.R. § 3.306. A Veteran is presumed to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted on the entrance examination report. 38 C.F.R. § 3.304(b). The presumption of soundness is rebutted where clear and unmistakable evidence demonstrates that an injury or disease existed prior thereto, and was not aggravated by such service. Id. 

Establishing service connection for PTSD requires (1) a PTSD diagnosis conforming to the criteria of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (DSM-IV); (2) a link, established by medical evidence, between a Veteran's present symptoms and an in-service stressor; and (3) credible supporting evidence that the claimed in-service stressor actually occurred. See 38 C.F.R. § 3.304(f); Cohen v. Brown, 10 Vet. App. at 139. If PTSD was diagnosed by a medical professional, VA must assume that the diagnosis meets the DSM-IV criteria relating to adequacy of the symptomatology and sufficiency of the stressor. Id. at 153. The Board notes that this regulation was amended effective August 4, 2014 to reflect a new edition of the DSM (DSM-5). However, the change does not apply to cases already pending before the Board at that time. 80 Fed. Reg. 53, 14308 (March 19, 2015).

The evidence required to support the occurrence of an in-service stressor varies depending on whether a Veteran was engaged in combat with the enemy. In cases such as this, where there is no combat service, the appellant's assertions of in-service stressors, standing alone, cannot as a matter of law provide evidence to establish an event claimed as a stressor occurred. Dizoglio v. Brown, 9 Vet. App. 163, 166 (1996). Rather, the claimant must provide "credible supporting evidence from any source" that the event alleged as the stressor in service occurred. Cohen, 10 Vet. App. at 147.

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

Evidence & Analysis

As discussed above, a service connection requires evidence of three elements. These will be discussed separately. 

 1. Current Diagnosis

The Veteran has current diagnoses of major depressive disorder, depression not otherwise specified (NOS), panic disorder, and anxiety NOS. He therefore meets the first criteria for service connection, a current diagnosis. 

One medical treatment provider, Dr. T.K., and Dr. T.K.'s Psychiatric Mental Health Nurse Practitioner, N.B., have diagnosed the Veteran with PTSD. These treatment providers, in their diagnoses in treatment notes dated from February 2006 to April 2007, did not address the DSM-IV criteria for PTSD, and failed to indicate what, if any, stressor formed the basis for the diagnosis. 

In the July 2014 Joint Motion, the parties noted that, in its November 2013 decision, the "the Board found that [the Veteran] did not have a valid [PTSD] diagnosis," and that, "[i]n support of this conclusion, the Board noted that while [the Veteran] had been diagnosed with PTSD by Dr. T.K. in 2006, that physician did not address the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) criteria for PTSD and failed to indicate what, if any, stressor formed the basis for that diagnosis." However, the parities noted the Court's determination in Cohen "that if PTSD was diagnosed by a medical professional, VA is required to assume that that diagnosis met the DSM-IV criteria relating to the adequacy of symptomatology and sufficiency of the stressor," and that, therefore, "the Board's statement of reasons or bases is inadequate, frustrating judicial review, and requiring vacatur and remand." See Cohen, 10 Vet. App. at 153.

In this regard, the Board notes that, in Cohen, the Court determined that where "there has been an 'unequivocal' diagnosis of PTSD by mental health professionals, the adjudicators must presume that the diagnosis was made in accordance with the applicable DSM criteria as to both adequacy of symptomatology and sufficiency of the stressor (or stressors)." Id. However, in the very next sentence in Cohen, the Court stated that, "[i]n examining these diagnoses, the adjudicators may reject a claim only upon finding a preponderance of the evidence against a PTSD diagnosis, against the occurrence of in-service stressor(s), or against the connection of the present condition to the in-service stressor(s). Id. 

In determining whether the evidence in fact supports a finding that the Veteran has PTSD, the Board notes the Veteran's assertion of two particular "stressors" as the basis for his PTSD claim. First, he claims that he was repeatedly teased for his poor eyesight. In this regard, the Board observes that an October 1976 profile indicated that the Veteran's corrected visual acuity did not meet the minimum visual acuity standards for military wheeled vehicle operations. His second asserted stressor is that his mother died while he was on active duty service; that fact is likewise supported by the record, as it reflects that the Veteran's mother died from breast cancer in January 1976. For purposes of this discussion, the Board concedes that these alleged "stressors" occurred. The Board notes that, during a June 2013 private psychiatric examination, the Veteran apparently reported a third stressor of at times getting in fights and often being beaten up after being ridiculed in service. However, for reasons discussed below, the Board finds this third stressor involving physical assault not to be credible.

While the Veteran asserts that these first two conceded stressors as the basis for his PTSD claim, the Board finds that the weight of the probative evidence is against a finding that the Veteran has PTSD. In a March 2012 VA examination report, Dr. B.L., a psychologist, opined following examination of the Veteran that neither the name calling and teasing the Veteran suffered, nor his mother's death, met the DSM-IV criteria as stressors sufficient to support a PTSD diagnosis. She discussed the fact that "criterion A1 requires that the person experienced, witnessed, or was confronted with an event or events that involved actual or threatened death, or serious injury, or serious injury, or a threat to the physical integrity of others." She opined that the other soldiers' verbal teasing of the Veteran, without threatened physical confrontation, did not meet that first criterion. Although the Veteran's mother's death could meet that criteria, according to Dr. B.L., she opined that her death did not meet "criterion A2," which required that the person's "response involved intense fear, helplessness, or horror." 

The Board finds the March 2012 VA examination report to be more probative on the question of whether the Veteran has PTSD than the February 2006 to April 2007 notes from Dr. T.K and N.B. Dr. B.L. supported her opinion with a complete and persuasive rationale, the basis of which is consistent with the evidence of record, directly addressing and analyzing the Veteran's asserted stressors and citing and applying the pertinent diagnostic criteria. In contrast, again, Dr. T.K. and N.B. neither addressed the DSM-IV criteria for PTSD nor indicated what, if any, stressor formed the basis for the diagnosis. 

Additionally, while the Veteran has been treated and examined by numerous other mental health professionals, and has been repeatedly diagnosed with anxiety, depression, and substance abuse disorders, only Dr. T.K. and N.B. have diagnosed PTSD. Such other professionals include a January 2009 VA examiner, a February 2013 VHA examiner, and the Veteran's own private examiner, Dr. J.L.N., in June 2013.

The Board therefore finds that the weight of the probative evidence is against a finding that the Veteran has PTSD.

 2. In-service incurrence or injury

The second criterion for service connection requires an in-service incurrence of a disease or injury. 

During a July 2013 private examination, the Veteran was noted to have reported that "he would often get in fights with others and would often be beaten up with the origin of the fight often being in ridicule directed at him," and that "he was shunned, beaten, humiliated and marginalized due to his significant visual impairments." However, the Board does not find any such assertions of personal assault to be credible. In describing his asserted in-service traumatic events on VA examination in January 2009 or to other mental health providers, while reporting verbal teasing in service, he did not report any physical assaults or confrontations. On the contrary, on March 2012 VA examination, in noting that the Veteran reported verbal teasing in service, the examiner stated: "The patient indicated that the teasing was verbal. The soldiers did not engage in any physical altercations nor in any threats of physical altercation." Also, in his statements to VA and testimony before the Board in March 2011 and again in January 2015, while reporting verbal teasing from other soldiers in service, which he asserted as an in-service stressful event, he did not report any physical assault. Furthermore, as noted above, in September 2011, in efforts to develop his claim, the Veteran was provided a VA form entitled "STATEMENT IN SUPPORT OF CLAIM FOR SERVICE CONNECTION FOR POST-TRAUMATIC STRESS DISORDER (PTSD) SECONDARY TO PERSONAL ASSAULT," which requested that he list and describe the stressful incident or incidents that occurred in service that he felt contributed to his current condition, specifically any personal assault, and he did not complete and submit the form.

Given the above, including the Veteran's own statement in March 2012 contradicting the assertion that he was physically assaulted in service, the Board finds the Veteran's single, unsubstantiated assertion in July 2013 not credible.

However, the Board acknowledges the Veteran's assertions with respect to the teasing and the death of his mother that occurred while he was on active duty. These events may constitute the requisite in-service event or injury upon which a grant of service connection may be based, or, theoretically, events that caused aggravation of a pre-existing disability. See Holton, 557 F.3d at 1366.

 3. Nexus

The remaining question, therefore, is whether the evidence supports the requisite nexus, either causational or aggravational, between the in-service events and the current psychiatric disability. 

Initially, the Board notes that, as is discussed below, it finds that no psychiatric disorder manifested or was incurred in service. Service connection based on aggravation applying the presumption of soundness under 38 C.F.R. § 3.304(b) is not warranted unless there is "evidence that a disease or injury that was not noted upon entry to service manifested or was incurred in service." Gilbert v. Shinseki, 26 Vet. App. 48, 52 (2012). However, the Board will address the question of aggravation, as it is raised in VA examination reports.

With regard to psychiatric disabilities, the Veteran is presumed sound at his entry into active duty. 38 C.F.R. § 3.304(b). His August 1975 entrance psychiatric examination was normal; thus, unless there is clear and unmistakable evidence to the contrary, the presumption of soundness must remain. In this case, there is no such evidence. 

The only evidence to support a finding that a psychiatric disability preexisted service is from Dr. B.L., discussed above. She opined that it is "more likely than not . . . that depression and anxiety associated with [poor] eyesight preceded his military service." In contrast to her discussion of the sufficiency of the Veteran's claimed PTSD stressors, she provided no rationale for the pre-existing disability opinion, other than the assertion that his poor eyesight pre-existed service and made it difficult for him to be accepted into active duty, that his father died when he was a child, and that his mother was sick prior to his entering active duty. Other than listing potential causes for a pre-service disability, she did not support her opinion in any way. There does not appear to be any competent clinical evidence to support this opinion.

In contrast to Dr. B.L.'s opinion, the Veteran denied depression, excessive worry, and nervous trouble of any sort on the medical history report that accompanied his entrance examination. Also, as related in a June 2013 private examination report, the Veteran continues to assert that his psychiatric difficulty began during active duty. That examiner opined that the disability began during service, and not prior to active duty. 

Further, other current examiners have professed supported opinions in disagreement with that of Dr. B.L. Dr. J.E.C. opined in a June 2012 opinion that "[t]he problem with [Dr. B.L.'s opinion] is that there is no evidence from the records or the Veteran's self-report to suggest that the onset of his depression and anxiety was prior to his entry into the military. Therefore, there would not be any conditions to be aggravated by military service." 

The February 2013 VHA opinion from Dr. R.T.R. addressed the full history of the Veteran's disability, and provided a fully-supported opinion that there was not clear and unmistakable evidence that any current psychiatric disorder pre-existed military service. He opined that other than excessive alcohol intake, which began while the Veteran was a teenager, there is no evidence of any depressive symptoms prior to service, other than typical bereavement symptoms following his father's death when the Veteran was 11 years old. 

While there is some evidence in the form of Dr. B.L.'s opinion that a psychiatric disability may have pre-existed service, that evidence is not supported by a rationale. Her opinion is not probative. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302 (2008). Further, there is significant evidence that the Veteran did not have a pre-existing psychiatric disability. There is not, therefore, clear and unmistakable evidence that the disability pre-existed service, and thus the presumption of soundness remains. 38 C.F.R. §§ 3.304, 3.306. 

The Board must still determine whether the disability began during service, as the result of his mother's death and the teasing he suffered related to his poor vision, or whether it is otherwise related to service. 38 C.F.R. § 3.303. 

The Veteran testified at his March 2011 videoconference hearing that his psychiatric condition began after, and was related to, the teasing he suffered in service and his mother's passing while he was on active duty, and he reiterated this testimony during his January 2015 Board hearing. He testified that he used alcohol during service to relieve psychiatric symptoms. He also asserted during his March 2011 hearing that he sought treatment in service, but could not remember the location of that treatment, or the doctor who provided it. However, the Veteran specifically denied receiving treatment for mental health while in service to his January 2009 VA examiner, and during his January 2015 Board hearing he testified that he did not seek mental health treatment because "there was no offer of any help for any counseling or rehabilitation at that time." The Board finds that the Veteran's inability to remember any details concerning his alleged treatment, as well as his own direct contradiction of his March 2011 testimony regarding whether such treatment occurred, severely detracts from the credibility of his assertion of in-service treatment. See Caluza v. Brown, 7 Vet. App. 498, 511-12 (1995). There is also no reference in the service treatment records of in-service psychiatric treatment. The Board finds that there is no credible evidence to suggest that the Veteran received in-service psychiatric treatment. 

The Veteran's personnel records reflect that he was counseled for substance abuse during active duty. He ultimately refused rehabilitation efforts, and was recommended for discharge. His December 1976 separation examination noted a normal psychiatric profile. A separate mental status evaluation at separation noted normal behavior, and that he was fully oriented and alert, with level mood, clear thinking processes, normal thought content, and good memory. The Veteran did, however, indicate that he experienced "depression or excessive worry" on the medical history report accompanying his separation examination. 

Considering the Veteran's report of "depression or excessive worry" on his December 1976 medical history report, the Board finds that he is competent to report his symptoms. See Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011). He is not competent, however, to provide a psychiatric diagnosis for himself; such a finding would require medical training and expertise. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Further, the Board notes, multiple examiners have related that the Veteran was struggling with alcohol dependence during service and throughout the time period thereafter. Thus, his description of his symptoms, as it is competent and relevant, should be considered by medical professionals in reaching an opinion on whether the Veteran's psychiatric disability had its onset or is otherwise related to service; the description, however, is insufficient to demonstrate that a psychiatric disability had its onset during service. 

Following service, the Veteran received treatment at VA facilities in the 1970s and 1980s for alcohol dependence, but did not receive any psychiatric diagnoses during that time period. 

The first notation of a psychiatric disorder is from records of Dr. D.G. in May 2003. That record indicated that the Veteran's past medical history included a diagnosis of depression, thus indicating that the diagnosis preexisted that date of treatment. The record did not indicate that the Veteran's depression had been present since service

A December 2005 treatment note from Dr. S.E.G. noted a history of anxiety, with a "breakdown" eight years prior.

In February 2006, the Veteran began to receive treatment from Dr. T.K. He informed the provider of experiencing depression since he was 11 years old, following his father's death. Dr. T.K. noted chronic anxiety and insomnia that had each been in a persistent pattern for many years, and chronic depression that had been occurring in an intermittent pattern for many years. Dr. T.K. did not provide an opinion regarding the onset or cause of the Veteran's anxiety, depression, or insomnia. He included a notation without context that the appellant was exposed to "war related trauma" while serving in Germany; the Board observes that, contrary to Dr. T.K.'s note, there is no evidence that the Veteran was ever exposed to "war related trauma."

A January 2009 VA examination report from Dr. M.A.B. provided an opinion that the Veteran's psychiatric disability did not have its onset during active duty service and is not the result of his military service. That opinion was unsupported by any rationale, and thus the report not probative concerning the issue of nexus. See Nieves-Rodriguez, 22 Vet. App. at 302. 

Dr. B.L.'s opinion, as previously discussed, indicates that the Veteran had a pre-existing psychiatric disability that was aggravated by service. The Board has already addressed the fact that her opinion in that regard is not supported by a rationale, but now further finds that she did not provide an opinion, supported or otherwise, regarding whether the Veteran's current psychiatric disability began during service. 

Dr. J.E.C. provided the opinion that the Veteran's depression and anxiety "were more likely than not a result of experiences that manifested during his military service." He did not provide any rationale, or cite any facts upon which he relied, in support of that opinion, and thus, as with the January 2009 VA opinion, his nexus opinion is not probative of the matter. Id. 

There are two opinions that are probative of the etiology of the Veteran's psychiatric condition. The first is the VHA opinion from Dr. R.T.R., referenced above, which the Board sought in January 2013. The second is a private medical opinion from Dr. J.L.N., provided by the Veteran in response to the opinion from Dr. R.T.R.

In his February 2013 report, Dr. R.T.R. fully documented the Veteran's in-service history, including his claims of abuse, his in-service promotion, and the behavioral and disciplinary problems for which he received reprimands, counseling, and ultimately discharge from the military. He addressed the post-service treatment records, including multiple inpatient treatments for alcohol abuse, as well as the Veteran's various post-service psychiatric diagnoses, his physical condition, and his employment history. He opined with regard to whether the current disability had its onset during service, or immediately thereafter, that there was

. . . no evidence the Veteran developed syndromal depression or anxiety disorder while on active duty or within one year of active duty. In contrast, there is ample documentation in his service records of excessive alcohol intake and other drug abuse. There is evidence that post-military service the Veteran developed Depressive Disorder Not Otherwise Specified and Anxiety Disorder Not Otherwise Specified, but these were first diagnosed around 2005, more than 25 years after the Veteran's discharge. Further, the intervening years were marked by his alcohol abuse sufficient to cause blackouts and seizures and to require a number of VA hospitalizations for detox. It is likely that the Veteran's later-onset depressive and anxiety disorders were related to his many years of excessive drinking as well as to some of the physical infirmities he was developing as he grew older. 

Dr. R.T.R. also provided a negative opinion as to whether it was at least as likely as not that any of the appellant's current psychiatric disorders were related to events that occurred during active duty. He opined, 

. . . the Veteran's military service was marked by some success in qualifying as a Light Infantryman and being promoted to [Private First Class], but his excessive drinking (deliberately continued by the Veteran as a successful way out of the Army) and other behavioral problems reversed his successes, leading to sanctions and discharge. Following military service he continued to drink excessively and had medical complications from his drinking (blackouts, seizures), but he was able to maintain consistent employment until 2005. It therefore is highly unlikely that the Veteran's Depressive Disorder Not Otherwise Specified and Anxiety Disorder Not Otherwise Specified, first diagnosed around 2005, bear any relation to events occurring during his military service between Sept[ember] 1975 and Feb[ruary] 1977, some 25 years earlier.

In June 2013, the Veteran submitted a private psychiatric report from Dr. J.L.N. Dr. J.L.N. described the Veteran's pre-service history, including the "sadness and bereavement" he experienced after his father's death, and his difficulty due to impaired vision. According to the Veteran, he had trouble on the shooting range because of visual acuity problems, and was forbidden to drive Army vehicles. His impaired vision resulted in frequent teasing and shunning, and his humiliation in being told that he was not a fully-fledged member of the infantry team and that he could not be relied on in a crisis. At times he would get in fights and often be beaten up following such ridicule. The Veteran asserted that he became depressed in the Army because of those experiences. 

Dr. J.L.N. documented the Veteran's post-service psychiatric treatment history, as well as his inpatient treatment for alcoholism and his history of opiate addiction, and his physical condition. Dr. J.L.N. diagnosed the Veteran with major depressive disorder, alcohol dependence, and opiate dependence in full sustained remission. 

In drafting his opinion, Dr. J.L.N. reviewed the February 2013 report by Dr. R.T.R., and noted his disagreement concerning the onset of the Veteran's depression. Dr. J.L.N. referenced the Veteran's adverse childhood experiences, and explained that those factors are often associated with "the subsequent development of psychiatric illness later in life." Dr. J.L.N. stated that, considering the Veteran's experiences in the Army in which he was "shunned, beaten, humiliated and marginalized due to his significant visual impairments," it was his opinion that "it appears reasonable to conclude that it is as likely as not that [the Veteran's] depressive symptoms developed during his active duty and have continued to be present in a waxing and waning pattern since." 

The Board finds the opinion of Dr. R.T.R. to be more probative of the ultimate question, that is, whether the Veteran's current disability is etiologically related to his military service. See Willis v. Derwinski, 1 Vet. App. 66, 70 (1991). In weighing the opinions by Dr. R.T.R. and Dr. J.L.N., the Board observes that although Dr. J.L.N. noted the fact that the Veteran has a long history of alcohol abuse, requiring a dozen inpatient admissions since service, he failed to address what effect, if any, such a long-standing addiction has had on the Veteran's current psychiatric condition. In acknowledging that Dr. R.T.R. had addressed that fact in his report, Dr. J.L.N. merely indicated his disagreement, and cited his differing opinion concerning the onset of the disability, rather than explaining why he disagreed.

Further, Dr. J.L.N. failed to address the long delay between the Veteran's separation from service and his first psychiatric diagnosis, other than (and in spite of) the numerous times that the Veteran was treated on an inpatient basis due to alcoholism. This fact is addressed in the February 2013 VHA opinion, and is consistent with Dr. R.T.R.'s conclusion that the Veteran's psychiatric disability had its onset many years after service.

The Board finds that Dr. J.L.N.'s opinion includes a well-reasoned rationale, and is, to a degree, probative of the matter. See Nieves-Rodriguez, 22 Vet. App. at 302. It is evident, however, that he did not consider, or at minimum, did not discuss, all of the relevant factors. That omission detracts from the ultimate probative value of his report. 

Moreover, as noted above, Dr. J.L.N.'s opinion was based, in part, on the Veteran's report that "he would often get in fights with others and would often be beaten up with the origin of the fight often being in ridicule directed at him," and that "he was shunned, beaten, humiliated and marginalized due to his significant visual impairments." However, as discussed above, the Board does not find any such assertions of personal assault to be credible. Therefore, Dr. J.L.N.'s opinion was based on an inaccurate basis. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993). 

Dr. R.T.R. considered and discussed the Veteran's assertions regarding abuse from other soldiers, but explained that, especially considering the fact that the Veteran was promoted to Private First Class ten months after entering active duty, and the subsequent demotion related to his alcohol abuse, it is the Veteran's longstanding history of alcoholism that is the cause of his current psychiatric condition. In so doing, Dr. R.T.R. addressed all possible etiologies of the Veteran's disability, and explained why the disability did not begin during, and was not related to, the Veteran's military service. 

Dr. R.T.R.'s opinion is fully supported, well-reasoned, and consistent with all of the evidence of record. Id. The Board finds his opinion more probative of the nexus issue than the opinion by Dr. J.L.N. and, as such, the Board finds that the weight of the probative evidence of record is against the Veteran's claim. Service connection for an acquired psychiatric disorder, therefore, is not warranted.

In reaching the conclusion above the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. at 55-57.


ORDER

Service connection for an acquired psychiatric disorder is denied.



_______________________________ _______________________________
 M. TENNER MICHAEL D. LYON 
 Veterans Law Judge, Veterans Law Judge, 
 Board of Veterans' Appeals Board of Veterans' Appeals


 
____________________________________________
R. FEINBERG
Acting Veterans Law Judge, 
Board of Veterans' Appeals




Department of Veterans Affairs