Citation Nr: 1527847 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 13-11 029 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to service connection for an acquired psychiatric disorder, other than posttraumatic stress disorder (PTSD). 

2. Entitlement to service connection for a low back disorder. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

S. Keyvan, Counsel


INTRODUCTION

The Veteran had active service from September 2000 to September 2004. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from the March 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).

During the current appeal, and specifically in November 2013, the Veteran also testified at a Travel Board hearing at the Muskogee RO. 

Although the RO framed the original issue on appeal as entitlement to service connection for PTSD, a review of the record indicates that the Veteran was also diagnosed as having major depressive disorder, generalized anxiety disorder, and mood disorder secondary to chronic back pain. During the pendency of this appeal, the United States Court of Appeals for Veterans Claims (Court) addressed the scope of claims generally in regard to what is claimed versus what should be addressed by VA. Clemons v. Shinseki, 23 Vet. App. 1 (2009). In Clemons the Court held that, in determining the scope of a claim, the Board must consider the Veteran's description of the claim, symptoms described, and the information submitted or developed in support of the claim. Id. at 5. In light of the Court's decision in Clemons, the varying diagnoses recounted above, and the April 2014 Board decision granting service connection for PTSD, the Board has recharacterized the claim for a psychiatric disorder to entitlement to service connection for a psychiatric disorder other than PTSD-as stated on the title page of this decision. This will provide the most favorable review of the Veteran's claims for a psychiatric disorder in keeping with the Court's holding in Clemons.

Before the claims file was certified for appeal, by an April 2015 rating action, the RO granted service connection for the Veteran's skin disorder (acne), evaluating it as noncompensably disabling, effective September 17, 2009. The Board finds that this grant of service connection for acne constitutes a full award of the benefit sought on appeal with respect to this issue. See Grantham v. Brown, 114 F. 3d 156, 1158 (Fed. Cir. 1997). The record on appeal contains no indication that the Veteran has appealed the downstream elements of effective date or initial rating for this disability; thus, this matter is not in appellate status.

This matter was previously before the Board in April 2014 at which time it was remanded for additional development. It is now returned to the Board. 

Since the RO's most recent adjudication of the Veteran's claims, additional, pertinent evidence has been associated with the claims file. In the June 2015 Appellant's Post-Remand Brief the Veteran waived local consideration of this evidence in accordance with 38 C.F.R. § 20.1304(c) (2014). Accordingly, the Board may proceed without prejudice to the Veteran. Bernard v. Brown, 4 Vet. App. 384, 392-94 (1993).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


REMAND

After a thorough review of the Veteran's claims file, the Board has determined that additional evidentiary development is necessary prior to the adjudication of the Veteran's claim for service connection for a low back disorder and psychiatric disorder other than PTSD. Another remand is essential to ensure that the prior Board remand instructions are complied with and carried out prior to a final adjudication of the claim. 


Low Back Disorder

Pursuant to the April 2014 remand, the Veteran's claims file was referred to the same VA examiner who conducted the January 2010 VA spine examination. The examiner was asked to take into consideration the October 2003 and February 2004 clinical reports documenting the Veteran's in-service complaints of low back pain, as well as the March 2004 Post-Deployment Health Assessment questionnaire in which the Veteran indicated that he had been experiencing back pain both during and since his deployment in Kuwait and Iraq. The examiner was asked to provide an opinion as to the likelihood that the Veteran's current back disability was incurred in service, or was otherwise related to his military service to include his in-service complaints of back pain. In answering this question, the examiner was asked to address the Veteran's assertions of ongoing pain in his back shoulder since service. 

In accordance with these instructions, the claims file was referred to the same VA examiner, I.M., M.D., who, in an October 2014 opinion, determined once again that the Veteran's lumbar spine spondylosis, status post laminectomy, was less likely than not caused or related to his military service. The VA examiner, however, was unable to locate the clinical reports and Post-Deployment Health Assessment questionnaire referenced in the April 2014 Board remand, and her negative conclusion appears to have been based on the mistaken understanding that these records were unavailable. In her opinion, she noted that the service treatment records had been reviewed, and were negative for complaints or diagnoses of, or treatment for low back symptoms, as well as abnormal findings on annual physical examination. She also noted that the March 2004 Post-Deployment Health Assessment questionnaire was not tabbed and could not be found in the record. These records, however, are not only available and associated with the Veteran's VBMS paperless claims folder, but they also reflect the Veteran's complaints of back pain, as well as assessments of a strain (April 2003), lumbago that is likely related to the sacroiliac joint (October 2003), and thoracolumbar back spasm (February 2004). The Veteran also reported to experience symptoms of back pain both during and after his deployment to Kuwait and Iraq in the post-deployment health assessment questionnaire. As such, the Board finds that the October 2014 VA medical opinion was based on an incomplete and inaccurate review of the claims file. The above-referenced service treatment records have been tabbed and labelled in the VBMS claims folder, and the examiner should review these records and take them into consideration prior to issuing her opinion. If necessary, the AOJ should take necessary measures to ensure that in addition to providing the examiner with the claims file, these particular records are made available to the examiner or arranged in way that makes them easier to locate/retrieve. As such, the Board finds that the October 2014 medical opinion was not predicated on an accurate and complete review of the claims file. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Accordingly, the matter must be remanded for the VA examiner who evaluated the Veteran in January 2010 and issued the October 2014 opinion, to provide a clarifying opinion after reviewing the claims file, to include the specified service treatment records, in full. 

Psychiatric Disability (Other than PTSD)

The Veteran contends that he suffers from psychiatric problems after encountering several traumatic experiences in service. In addition to his exposure to combat-related stressors while serving in Iraq, the Veteran contends that he was drugged and sexually assaulted in July 2004 during his military service as well. According to the Veteran, he tried to report this incident to the local military therapist, but felt ashamed, afraid and embarrassed. See Undated statement of Veteran, received and scanned into VBMS in August 2013. Although his service treatment records do not document any evidence of a sexual assault, his military personnel records reflect that the Veteran tested positive for cocaine and two types of methamphetamines after undergoing a urinalysis in August 2004, and was charged with violating the Uniform Code of Military Justice (UCMJ) in September 2004. See August 2004 Developmental Counseling Form. The September 2004 charge sheet reflects that the Veteran was charged with violating Article 112a of the UCMJ due to the fact that he wrongfully used cocaine and methamphetamines sometime between or about July 2004 and August 2004. As a result of these violations, the Veteran's Commanding Officer recommended his immediate separation from the U.S. Army. It appears that when the Veteran did separate from service in September 2004, his discharge was characterized as under other than honorable conditions. In numerous statements throughout the pendency of his claim, the Veteran has asserted that he was drugged during the reported sexual assault, which was why the results of his urinalysis were positive for cocaine and methamphetamines. The Board notes that since this time, the character of the Veteran's service has been upgraded to honorable. 

In addition to his reported military sexual trauma, both the RO and the Board have conceded the Veteran's exposure to combat stressors in service. Furthermore, review of the Veteran's VA and private treatment records reflect ongoing treatment for, and diagnoses of, major depressive disorder, generalized anxiety disorder, polysubstance dependence, and mood disorder secondary to chronic back pain. After conducting a psychiatric evaluation of the Veteran, the January 2010 VA examiner diagnosed the Veteran with having depressive disorder not otherwise specified (NOS). 

In the April 2014 Board remand, the AOJ was instructed to obtain any treatment records issued at Green County Mental Health Center that pertained to psychiatric treatment provided to the Veteran. The Board was particularly interested in whether the Veteran received psychiatric treatment any time prior to service. The AOJ attempted to retrieve these records, but the December 2014 and March 2015 Report of General Information slips (that documented conversations between the Veteran and the RO) reflect that the Veteran reportedly had been informed by this facility that records generated at this facility were not maintained after seven years, and as such had been destroyed due to the length of time that had passed. Despite the fact that the Veteran had recently completed a medical authorization form that was specific to records maintained at Green County Behavioral Health Services in February 2015, he requested that the AOJ discontinue waiting for additional evidence to be received, and not follow through with sending the completed medical authorization forms. 

Pursuant to the remand instructions, the claims file was referred to the same VA examiner who conducted the January 2010 psychiatric examination. If the medical records reflected a diagnosis of a psychiatric disorder prior to the Veteran's military service, the examiner was then asked to address whether the Veteran had a psychiatric disability prior to his entrance into the military service in September 2000, and if so, whether said pre-existing psychiatric disorder underwent a permanent increase in severity during the Veteran's period of service. Since no additional records from Green County Mental Health Center were retrieved, in an April 2015 medical opinion, C.H., M.D., the same VA examiner who conducted the January 2010 VA psychiatric examination, determined that since records from the Green County Mental Health Center were considered unavailable, then any remaining questions listed in the Board remand instructions did not need to be addressed. Although this was true for the first two questions listed in the remand directives pertaining to the Veteran's claimed psychiatric disorder, this was not true for the third question, which asked that for any psychiatric disorder that did not pre-exist the Veteran's September 2000 entrance into service, and that was diagnosed during the pendency of the claim-whether any such disability had its onset in service or was otherwise causally or etiologically related to active service. 

The Board understands that the way in which the remand questions were phrased may have led the examiner to believe that all three questions only had to be addressed if records from Green County Mental Health Center were received and reflected a diagnosis of a psychiatric disorder prior to his military service. Because the specified records were not received, the examiner mistakenly believed that any remaining questions did not need to be answered. This is not the case, however, and the question of whether there is a direct etiological relationship between the Veteran's current psychiatric disorder and his military service must be addressed before the Veteran's claim can be adjudicated. As such, another remand for a clarifying medical opinion is necessary. See Stegall v. West, 11 Vet. App. 268 (1998) (where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance). 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Refer the claims file to the same VA examiner who conducted the January 2010 spine examination, and provided the April 2014 medical opinion, or another VA physician if that examiner is unavailable. The claims file, to include all records on the VBMS and Virtual VA claims processing system must be made available to the examiner in conjunction with the examination. In addition to the April 2003 medical record, the examiner should also take into consideration the October 2003 and February 2004 clinical reports which document the Veteran's in-service complaints of low back pain. The examiner should also take note of the March 2004 Post-Deployment Health Assessment questionnaire wherein the Veteran indicated that he had been experiencing back pain both during and since his deployment in Kuwait and Iraq. The AOJ should take any steps necessary to ensure that these particular records are arranged or labelled in a way that makes them easy to locate by the examiner. Consideration should be given to the Veteran's history and particularly to any statements regarding continuity of symptoms since service. 

Following a review of the record, the examiner should then express an opinion as to whether it is at least as likely as not (i.e., a 50 percent or greater probability) that the Veteran's current back disability had its onset during the Veteran's period of active service or is otherwise related to the Veteran's military service to include his in-service complaints of back pain, as well as in-service assessments of back strain (April 2003), lumbago that is likely related to the sacroiliac joint (October 2003), and thoracolumbar back spasm (February 2004). In answering this question, the examiner should address the Veteran's assertions of ongoing pain for his back disorder since service. The examiner should set forth the medical rationale for accepting or rejecting the Veteran's statements regarding continuity of symptoms since military service. 

If the examiner finds that the Veteran's low back disability(ies) is/are not related to his service, then he or she must provide a complete rationale upon which his or her opinion is based, and must include a discussion of the medical principles as applied to the medical evidence and facts used in establishing his or her opinion. 

If the examiner determines that he/she cannot provide an opinion without resorting to speculation, the examiner should explain the inability to provide an opinion, identifying precisely what facts could not be determined. In particular, he/she should comment on whether an opinion could not be provided because the limits of medical knowledge have been exhausted or whether additional testing or information could be obtained that would lead to a conclusive opinion. 

2. Then, refer the claims file to the same VA examiner who conducted the January 2010 psychiatric examination and provided the April 2015 medical opinion, or another VA psychologist if that examiner is unavailable. The claims file, to include all records on the VBMS and Virtual VA claims processing system must be made available to the examiner in conjunction with the examination. Consideration should be given to the Veteran's history and particularly to any statements regarding continuity of symptoms since service. 

For any current psychiatric disorder, or a psychiatric disorder diagnosed during the pendency of the claim which has resolved at the time of the examination, the examiner should express an opinion as to whether it is at least as likely as not (i.e., a 50 percent probability or greater) that any such disability diagnosed had its onset in service or is otherwise causally or etiologically related to his active service, including his reports of being drugged and sexually assaulted in-service and/or his conceded military combat stressors. In answering this question, the examiner should address the Veteran's competent assertions that he has experienced psychiatric problems since service. The medical reasons for accepting or rejecting the Veteran's statements of continuity should be set forth. 

If the examiner finds that the Veteran's psychiatric disability(ies) is/are not related to his service, then he or she must provide a complete rationale upon which his or her opinion is based, and must include a discussion of the medical principles as applied to the medical evidence and facts used in establishing his or her opinion. Moreover, if the examiner finds that any psychiatric disorder was caused by his pre-military events, then he or she should provide an explanation or reasoning for this determination. 

If the examiner determines that he/she cannot provide an opinion without resorting to speculation, the examiner should explain the inability to provide an opinion, identifying precisely what facts could not be determined. In particular, he/she should comment on whether an opinion could not be provided because the limits of medical knowledge have been exhausted or whether additional testing or information could be obtained that would lead to a conclusive opinion. 

3. After completing the above, and undertaking any additional evidentiary development deemed necessary, readjudicate the remaining issues on appeal. If any benefits sought are not granted, the Veteran and his representative should be provided with a supplemental statement of the case. An appropriate period of time should be allowed for response before the case is returned to the Board. 

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
JAMES L. MARCH
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board is appealable to the Court. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).