﻿Citation Nr: AXXXXXXXX
Decision Date: 01/31/20 Archive Date: 01/31/20

DOCKET NO. 190617-10073
DATE: January 31, 2020

ORDER

Entitlement to service connection for a left shoulder disability, to include left labral tear, is denied. 

FINDING OF FACT

The Veteran’s left shoulder disability, to include left labral tear, was not noted as chronic in service, did not manifest to a compensable degree within one year of separation or demonstrate continuity of symptomatology, and is not otherwise related to active service. 

CONCLUSION OF LAW

The criteria for service connection for a left shoulder disability, to include left labral tear, have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1116, 1131, 1137; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309. 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Board notes that the rating decision on appeal, was issued in November 2017. In April 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

The Veteran served on active duty in the United States Air Force from August 1985 to March 1989. The Veteran selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the June 2018 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

Entitlement to service connection for a left shoulder disability, to include left labral tear, is denied. 

Entitlement to service connection requires evidence of three elements: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or nexus between the current disability and the disease or injury incurred or aggravated during active service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

The Veteran contends that he suffers from a left shoulder disability, specifically a left labral tear, which either began in service or was caused by service. 

The AOJ found that the Veteran’s separation examination conducted on February 15, 1989 noted a history of strained AC joint in the left shoulder while playing football in September 1986, and that an MRI conducted on December 17, 2013 noted mild irregularity in the superior glenoid labrum, which was possibly a small labral tear. 

The question in this case is whether a causal relationship or nexus exists between the Veteran’s current left shoulder disability and his active service, specifically his noted history of AC joint strain. 

The Board finds that a causal relationship or nexus cannot be presumed and the Veteran’s claimed left shoulder disability, to include labral tear was not at least as likely as not incurred in or caused by his active duty service, to include any alleged injury therein. 

Again, the Veteran has contended that he has a left shoulder disability, to include labral tear, as a result of his service, specifically due to an in-service injury while playing football which resulted in AC joint strain. 

The Veteran’s service treatment records (STRs) reflect that an AF Form 422 was issued due to AC joint strain and that the Veteran underwent X-rays on September 17, 1986 for his bilateral AC joints. However, it appears that the results of such were normal. On September 8, 1986, the Veteran was seen for complaints of right shoulder pain which he indicated was the result of playing football. At the Veteran’s February 15, 1989 separation examination, he denied shoulder pain, but did note a history of strained AC joint in his left shoulder from playing football in September 1986. 

The Veteran’s post-service treatment records are silent for any shoulder complaints, to include arthritis, within one year of the Veteran’s discharge from service. A May 2008 MRI of the left shoulder identified no rotator cuff tear, but a tear of the superior labrum extending anterior to posterior was noted. Clinical correlation was recommended. There was also evidence of AC joint degenerative changes. In May 2008 the Veteran gave a history of injuring his left shoulder 20 years prior playing football. Upon examination, he had poor active motion of the shoulder but passively he had good motion. He had slightly decreased biceps strength and poor external rotation. EMG testing was recommended. A May 2008 EMG of the left upper extremity was normal. In February 2013, the Veteran was seen for left shoulder pain, again he reported an injury 20 years prior. An MRI was conducted and was normal. In November 2013, he again complained of left shoulder pain. In December 2013, another MRI of the left shoulder was conducted and showed no rotator cuff tear but did reveal mild irregularity in the superior glenoid labrum, which was noted to possibly be a small labral tear. December 2013 X-rays showed a type I acromion with AC joint arthrosis. In April 2017, the Veteran was again seen for left shoulder pain which he noted was from an injury 30 years prior. He reported no formal physical therapy, but that he did undergo some type of interventional procedure 3-4 years prior with some relief. X-rays showed no acute bony abnormality, the differential diagnosis was rotator cuff tendinosis, impingement syndrome, or myofascial pain. 

In June 2017 the Veteran underwent a VA examination with an accompanying disability benefits questionnaire (DBQ) for his claimed left shoulder disability. The examiner noted a review of the Veteran’s records to include his STRs and post-service treatment records and found that the Veteran had a diagnosis of labral tear in December 2013. The Veteran reported that his left shoulder symptoms began in 1986 after he fell on his shoulder while playing football. He reported that his arm was placed in a sling and he was returned to duty. He alleged that his condition had gotten progressively worse and that he felt an intermittent sharp pain through his shoulder when doing intensive work, lifting overhead and reaching. He also stated that he attended physical therapy. X-rays were normal. The examiner opined that the Veteran’s condition was less likely than not incurred in or caused by his claimed in-service injury, event or illness. The examiner provided the rationale that while there were complaints of right shoulder pain, there were no complaints regarding his left shoulder while on active duty and that the Veteran denied shoulder pain on his February 1989 separation examination. 

In March 2018, an addendum opinion was obtained. The examiner opined that the Veteran’s claimed condition was less likely than not incurred in or caused by the claimed in-service injury or illness. The examiner provided the rationale that he had reviewed the Veteran’s records and that it was noted that in September 1984 the Veteran was in good health. His February 1989 history did not include any reference to a left shoulder injury. The examiner further noted the Veteran’s post-service records. Finally, the examiner discussed the June 2017 examination and noted that while the examiner gave the diagnosis of a labral tear, the March 2018 examiner found that such was based on the possibility of labral tear on MRI as there was no clinical exam findings to support that diagnosis and that the report was signed by a nurse practitioner. The March 2018 examiner found that there was no competent medical evidence that the Veteran actually had a labral tear. Rather the examiner noted that an MR arthrogram suggested labral tear as a possibility and recommended clinical correlation. However, the examiner noted that there has been no clinical correlation documented in the treatment records which rule in or out a labral tear. Furthermore, the examiner noted that the first reference to a left shoulder condition was approximately 20 years after the Veteran left the military. There is no indication in the service treatment record that he had a left shoulder complaint while in the military or an immediate time frame thereafter. Furthermore, the examiner noted that the record suggested that the Veteran was in a car accident in 1990 which may have been a source of some of his symptoms, and there were other records where the Veteran reported that he had an injury to his shoulder playing recreational football in the military and another where he indicated he injured his shoulder in college. However, the examiner stated that it does not appear that the Veteran was in college prior to his military service, and therefore that history was probably inaccurate. Ultimately, the examiner found that there was no definitive clinical evidence of a labral tear, and there was no evidence of service-related left shoulder condition. Therefore, the examiner found that it was less likely than not that any current left shoulder condition was incurred in or caused by left shoulder strain in service. 

Throughout the appeal, the Veteran has submitted statements which indicate his belief that his claimed current left shoulder disability was caused by or began during his active duty service. 

The Board notes that while there is some debate as to what the Veteran’s definitive diagnosis is, there is evidence that the Veteran has a current diagnosis of a left shoulder disability, to include a possible labral tear, AC joint degenerative changes, and AC joint arthrosis; therefore, the first element of service connection, whether for direct or presumptive service connection, is met. 

As for presumptive service connection and service connection based on continuity of symptomatology, while arthritis is a chronic disease subject to such forms of service connection, the objective evidence of record does not reflect that the Veteran was diagnosed with such or that such developed to a compensable degree within one year of the Veteran’s discharge from service. Rather, the Veteran was not diagnosed with any left shoulder disability until 2008, approximately 19 years after his discharge from service. Furthermore, there is no indication of any continuity of treatment or complaints of arthritis. Therefore, presumptive service connection or service connection based on continuity of symptomatology is not warranted. 

As far as direct service connection, the Board notes that while the Veteran’s STRs reflect that he complained of shoulder pain during service and there is a noted history of AC joint strain, throughout his STRs, the notations appear to be in reference to the Veteran’s right shoulder. However, at the Veteran’s separation examination, while he denied shoulder pain, he did note a history of left AC joint strain. And while the Veteran did not exhibit symptoms of or was diagnosed with any left shoulder disabilities, within one year of service discharge, the Board notes that in the light most favorable to the Veteran, the in-service element of direct service connection is met. 

However, as for the nexus element of direct service connection, both VA examiners in June 2017 and March 2018, opined that the Veteran’s current left shoulder disability was less likely than not incurred in service or as a result of any claimed in-service injuries. These opinions offered clear conclusions with supporting data as well as a reasoned medical explanation connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (“[A]medical opinion... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions”). Therefore, the Board affords great probative weight to the VA examiners’ opinions. Furthermore, the Board notes that there are no contrary opinions of record. As the Veteran is missing an essential element of direct service connection, direct service connection is not warranted. 

The Board has also considered the lay statements of the Veteran, which indicated that his left shoulder disability is related to his military service. In this regard, a layperson is competent to report on that of which he or she has personal knowledge. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). A lay person may speak to etiology in some limited circumstances in which nexus is obvious merely through observation, such as a fall leading to a broken leg. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007).

However, the question of causation of a left shoulder disability involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. In this regard, such an opinion requires specialized knowledge of the musculoskeletal system. There is no indication that the Veteran possesses such specialized knowledge and there is no indication that he had specialized training that would render him competent to render a medical diagnosis. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the lay opinion of the Veteran regarding the etiology of his left shoulder disability is non-probative evidence. See Jandreau, supra; Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). 

Moreover, the Veteran has offered only conclusory statements regarding the relationship between his left shoulder disability and his active duty service. In contrast, the VA examiners took into consideration all the relevant facts in providing their opinions. Therefore, the Board accords great probative weight to the VA examiners’ opinions.

Consequently, the Board finds that the Veteran’s left shoulder disability, to include labral tear, is not shown to be causally or etiologically related to a disease or injury incurred in or aggravated during active service. Therefore, service connection for such claimed disability is not warranted. 

In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran’s claim of entitlement to service connection for a left shoulder disability, to include labral tear. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 

 

L. M. BARNARD

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Unger, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.